*Mona H. Pinner, et al. v. Randy R. Pinner*, No. 1231, September Term 2017

**COURTS – PERSONAL JURISDICTION – SPECIFIC JURISDICTION – CONSENT TO BE SUED –** The filing and prosecution in Maryland of a single toxic tort suit by the appellant, a North Carolina resident, and her late husband was not a purposeful availment of the forum state that amounted to consent to be sued here.

**COURTS – PERSONAL JURISDICTION – SPECIFIC JURISDICTION – CONSTITUTIONAL REASONABLENESS –** It was not constitutionally reasonable for a Maryland court to exercise personal jurisdiction over the appellant based upon her prosecution of the prior Maryland lawsuit. The appellant did not travel to Maryland to prosecute the law suit, but relied upon her lawyers to take all necessary actions here; the claims in the instant suit are collateral to the claims raised in the tort suit and some arise under North Carolina law; it would burden her to defend the lawsuit here; and it would not burden the appellee, also a North Carolina resident, to prosecute his claims against her in North Carolina.

**LEGAL MALPRACTICE – STRICT PRIVITY RULE – THIRD PARTY BENEFICIARY EXCEPTION –** The cross-appellant lacked standing to sue the appellant's attorneys, the cross-appellees, for legal malpractice arising from their failure to timely name him as a use plaintiff and provide notice of his right to intervene in the wrongful death counts of her suit pursuant to Md. Rule 15-1001. The cross-appellant was neither the cross-appellees' client, nor an intended third-party beneficiary of the attorney-client relationship between the cross-appellees and the appellant.

Circuit Court for Baltimore City
Case No.  24-C-16-000247

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1231

September Term, 2017

_____

MONA H. PINNER, ET AL.

v.

RANDY R. PINNER

_____

Fader, C.J.,
Wright,
Eyler, James R.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Eyler, James R., J.
_____

Filed:  January 31, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal is from a default judgment in favor of Randy R. Pinner, appellee/cross-appellant, a North Carolina resident, against his step-mother, Mona Pinner, appellant, also a North Carolina resident, in the amount of nearly $100,000.[1] Randy noted a cross-appeal from the order dismissing his claims against Mona's former attorneys: Mary H. Keyes, Esq., and the Keyes Law Firms, LLC (collectively "the Keyes Defendants"); and against Napoli Bern Ripka Shkolnik, LLP ("the Napoli Firm"), various related entities, and lawyers employed by those entities, including Jason Weiner, Esq. (collectively "the Napoli Defendants"), [2] cross-appellees.

Prior to this suit, Edwin Pinner, Mona's late husband and Randy's father, and Mona, filed suit in the Circuit Court for Baltimore City, seeking damages for personal injuries caused by asbestos exposure ("the Asbestos Case"). Following Edwin's death from mesothelioma, the Asbestos Case was converted to a wrongful death and survival action on behalf of Mona, individually and as personal representative of the Estate of Edwin F. Pinner ("the Estate"). Ms. Keyes represented Mona (and Edwin) in the Asbestos Case for nearly two years until, by agreement with Ms. Keyes, the Napoli Firm

---

[1] For ease of discussion, we shall refer to the Pinners by their first names.

[2] In addition to the previously named firm and Mr. Weiner, the Napoli Defendants are: Napoli Bern Ripka Shkolnik & Associates, LLP; Napoli Bern, LLP; Napoli, Bern, & Associates, LLP; Napoli Bern Ripka, LLP; Napoli Bern Ripka & Associates, LLP; Law Offices of Napoli Bern Ripka Shkolnik LLP; Law Offices of Napoli Bern Ripka & Associates, LLP; Law Offices of Napoli Bern, LLP; Paul J. Napoli; Marc J. Bern; Alan S. Ripka; Hunter J. Shkolnik; Ethan Horn; Napoli Shkolnik PLLC; Napoli Shkolnik & Associates PLLC; Napoli Shkolnik LLC; Bern Ripka LLP; Paul Napoli Law PLLC; Marc Bern Law PLLC; Marie Kaiser PLLC; Napoli Law PLLC; Napoli & Partners PLLC; and Hunter J. Shkolnik Attorney At Law PLLC.

took over the case. After Mona added a wrongful death claim to the Asbestos Case, she did not timely serve notice on Randy, pursuant to Rule 15-1001, or name him as a use plaintiff. As a result, Randy did not learn of the wrongful death claim until more than three years after Edwin died and his motion to intervene in the Asbestos Case was denied as time-barred. After Mona settled with certain of the defendants in the Asbestos Case, she received settlement proceeds, but did not deposit those funds into the Estate in North Carolina.

Randy filed the instant action in the Circuit Court for Baltimore City asserting claims for negligence and breach of fiduciary duty against Mona, the Keyes Defendants, and the Napoli Defendants, as well as claims for aiding and abetting, negligent retention and supervision, and *respondeat superior* against certain of the Keyes Defendants and the Napoli Defendants. The circuit court granted motions to dismiss for failure to state a claim upon which relief may be granted as to all of the claims against the Keyes Defendants and the Napoli Defendants.

Mona failed to plead and Randy's request for an order of default was granted. After she unsuccessfully moved to vacate the order of default, the court held a damages inquisition hearing over two days, ruled that it had personal jurisdiction over Mona,[3] and entered a default judgment in favor of Randy for $99,856.84.

Mona appeals from the default judgment, presenting three questions, which we have rephrased:

---

[3] As we shall discuss, *infra*, the issue of personal jurisdiction was raised *sua sponte* by the court and occasioned the continuance of the damages hearing.

-2-

I. Did the circuit court err by exercising personal jurisdiction over Mona?

II. Did the circuit court err by applying North Carolina law to calculate Randy's damages?

III. Did the circuit court abuse its discretion by denying Mona's motion to vacate the order of default?

In his cross-appeal, Randy presents four questions, which we have condensed and rephrased as three:

IV. Did the circuit court err by dismissing the claims against the Keyes Defendants and the Napoli Defendants for negligence, negligent retention and supervision, and *respondeat superior* premised upon a breach of Rule 15-1001?

V. Did the circuit court err by dismissing the claims against the Keyes Defendants and the Napoli Defendants for aiding and abetting Mona's alleged breach of Rule 15-1001?

VI. Did the circuit court err by dismissing the claims against the Keyes Defendants and the Napoli Defendants for aiding and abetting a breach of fiduciary duty under North Carolina law?

For the following reasons, we answer the first question in the affirmative and shall remand with direction that the court vacate the default judgment and enter an order dismissing the claims against Mona for lack of personal jurisdiction. The resolution of the first question obviates the need for us to address Mona's other contentions of error. In the cross-appeal, we answer all three questions in the negative and shall affirm the dismissal of the claims against the Keyes Defendants and the Napoli Defendants.

**FACTS AND PROCEEDINGS**

*a. The Asbestos Case*

In August 2009, Edwin was diagnosed with mesothelioma. He lived with his wife, Mona, in North Carolina. Edwin has one biological son, Randy, from a prior marriage who also lives in North Carolina.

In September 2009, Edwin and Mona retained the services of the Keyes Defendants. On February 23, 2010, Ms. Keyes, on behalf of Edwin and Mona, filed suit in the Circuit Court for Baltimore City, Case No. 24-X-10-000032, against numerous defendants, including two of Edwin's former employers headquartered in Baltimore City – Continental Wire and Inland Steel – alleging that he had been directly exposed to asbestos dust while working for those companies. During discovery, Edwin and Mona identified Randy as Edwin's only biological son in their answers to interrogatories.

Eight months after suit was filed, on October 30, 2010, Edwin died from mesothelioma. In December 2010, Mona was appointed personal representative of the Estate in the General Court of Justice, Superior Court Division, Buncombe County, North Carolina. She listed the Asbestos Case as property of the Estate.

In March 2012, Ms. Keyes entered into an "Association Agreement" with the Napoli Firm whereby they agreed to take over all aspects of the Asbestos Case.

Two and one-half years after Edwin died, on April 24, 2013, Jason Weiner, Esq., an employee of the Napoli Firm and a lawyer admitted to practice in Maryland, filed an amended complaint on behalf of Mona that added a claim for wrongful death. In Maryland, "only one action" shall lie for the wrongful death of a person and it "shall be

-4-

for the benefit of the wife, husband, parent, and child of the deceased person." Md. Code (1974, 2006 Repl. Vol.), section 3-904(a) & (f) of the Courts and Judicial Proceedings Article ("CJP").   Pursuant to Rule 15-1001(b), "[a]ll persons who are or may be entitled by law to claim damages by reason of the wrongful death shall be named as plaintiffs whether or not they join in the action."  If a potential wrongful death beneficiary is not joined in the action, the words "to the use of" should precede their name. *Id.* The party bringing the wrongful death action is required to serve a copy of the complaint on each use plaintiff, along with a notice explaining their right to join the action.[4]  *Id*. at (d). Randy was not named as a use plaintiff in the amended complaint and was not served with a copy of the amended complaint or a Rule 15-1001(d) notice.

---

[4] That notice shall provide:

> You may have a right under Maryland law to claim an award of damages in this action. You should consult Maryland Code, § 3-904 of the Courts Article for eligibility requirements. Only one action on behalf of all individuals entitled to make a claim is permitted. If you decide to make a claim, you must file with the clerk of the court in which this action is pending a motion to intervene in the action in accordance with the Maryland Rules no later than the earlier of (1) the applicable deadline stated in § 3-904 (g) and § 5-201 (a) of the Courts Article ["the statutory deadline"] or (2) 30 days after being served with the complaint and this Notice if you reside in Maryland, 60 days after being served if you reside elsewhere in the United States, or 90 days after being served if you reside outside of the United States ["the served notice deadline"]. You may represent yourself, or you may obtain an attorney to represent you. If the court does not receive your written motion to intervene by the earlier of the applicable deadlines, the court may find that you have lost your right to participate in the action and claim any recovery.

Md. Rule 15-1001(d).

Over a year later, in June 2014, two of the defendants in the Asbestos Case moved to dismiss the wrongful death count of the amended complaint on the ground that Mona had failed to name Randy as a use plaintiff. In response to that motion, on July 8, 2014, Mona, through the Napoli Firm and Mr. Weiner, filed by consent a second amended complaint. The second amended complaint substituted Mona, individually and as personal representative of the Estate, as the only plaintiff, and, added Randy as a use plaintiff in the wrongful death count.

On July 10, 2014, three years and eight months after Edwin's death, Mona, through counsel, served Randy with a copy of the complaint and the Rule 15-1001(d) notice.

Within sixty days, on September 4, 2014, Randy moved to intervene in the Asbestos Case. The defendants opposed his intervention on the ground that his claim was time-barred. By order entered October 27, 2014, the circuit court permitted Randy to intervene for the limited purpose of conducting discovery relative to the limitations issue and, by order of June 23, 2015, denied his motion to intervene as time-barred.

**b. The Instant Case**

On January 19, 2016, Randy filed a sixteen-count complaint against Mona, the Keyes Defendants, Mr. Weiner, and the remainder of the Napoli Defendants arising from their "failure, among other things, to timely name Randy . . . as a use plaintiff in a wrongful death action and provide him with the notice required by Maryland Rule 15-1001." He alleged that Mona was a resident of North Carolina and that the Napoli Firm (and related entities) all were organized under the laws of New York State or Delaware.

He further alleged that the court had personal jurisdiction over the non-resident defendants pursuant to the Maryland long-arm statute, codified at CJP section 6-103, "in that each [defendant] either directly and/or by an agent, regularly solicited or conducted business, engaged in a persistent course of conduct, and derived substantial revenues from services within [Maryland] . . . [,]" and had caused tortious injury by acts or omissions within or outside the state.

Counts I, II, and IV pertained to Mona, individually and as personal representative of the Estate. Count I asserted that Mona negligently failed to name Randy as a use plaintiff in violation of Maryland Rule 15-1001. Count II alleged that she breached her fiduciary duties as personal representative of the Estate under North Carolina law by failing to provide notice under Rule 15-1001 and failing to distribute a share of the settlement monies from the Asbestos Case to Randy, a statutory beneficiary of the Estate. Count IV alleged that Mona was vicariously liable for the tortious acts and omissions of the Napoli Defendants.

Counts III, V, VI, VII, VIII, IX, X, XI, and XII all pertained to various of the Napoli Defendants, including Mr. Weiner. Count III asserted a claim for negligence against the Napoli Defendants for failure to name Randy as a use plaintiff. Count V alleged that the Napoli Defendants were vicariously liable for the tortious acts and omissions of Mr. Weiner in his conduct of the Asbestos Case. Counts VI, VII, X, and XI asserted that certain of the Napoli Defendants aided and abetted Mona's breach of Rule 15-1001 and her breaches of fiduciary duty. Counts VIII and IX asserted that certain of the Napoli Defendants negligently retained and/or supervised Mr. Weiner. Count XII

asserted that the successor entities to certain of the Napoli Defendants were liable for the tortious conduct of their predecessors in interest.

Counts XIII, XIV, XV, and XVI all pertained to the Keyes Defendants, asserting claims for negligence (Count XIII); aiding and abetting negligence by Mona (Count XIV); aiding and abetting breach of fiduciary duty by Mona (Count XV); and vicarious liability as to the Keyes Law Firm for the tortious acts and omissions of Ms. Keyes (Count XVI).

The Keyes Defendants and the Napoli Defendants moved to dismiss the complaint. The court held a hearing and, by amended order entered October 19, 2016, granted the motions to dismiss with prejudice. We shall discuss the arguments made and the court's ruling, *infra*.

Mona was served by private process in North Carolina on March 14, 2016, but failed to plead. Consequently, on November 28, 2016, Randy filed a request for an order of default. On January 4, 2017, the court entered an order of default. A "Notice of Default Order" was sent to Mona in North Carolina, advising that she could move to vacate the order within thirty days (*i.e.,* by February 3, 2017) explaining "reasons for the failure to plead and the legal and factual basis for the defense to the claim."

As we shall discuss, *infra*, Mona, through a third party, filed a motion to vacate the order of default on February 22, 2017. Her motion was denied, and the matter was set in for a damages inquisition on May 3, 2017. On that date, Randy appeared with counsel (as did representatives of the Napoli Defendants and the Keyes Defendants), but Mona did not appear. The court *sua sponte* raised the issue of personal jurisdiction, received

evidence on damages incurred by Randy, and then granted a continuance to permit Randy's counsel to brief the personal jurisdiction issue.

The hearing resumed on July 26, 2017. Mona again did not appear. At the outset, the court ruled that it had jurisdiction over Mona and heard argument on damages. At the end of the hearing, the court ordered Mona to pay Randy $99,856.84, which comprised one-half of the total settlement proceeds on the wrongful death claim, less a $60,000 spousal deduction under North Carolina law. An order to that effect was entered on July 28, 2017.

This timely appeal and cross-appeal followed. We shall include additional facts in our discussion of the issues.

## DISCUSSION

## APPEAL

### I.
### Personal Jurisdiction

"The existence of personal jurisdiction is a question of law." *Cappel v. Riaso, LLC*, 197 Md. App. 347 (2011). The burden is on the plaintiff "to establish the propriety of [the exercise] of personal jurisdiction." *CSR v. Taylor*, 411 Md. 457, 467 n.2 (2009). Before a court may exercise personal jurisdiction over a foreign defendant, such as Mona, the court must be satisfied that "the exercise of jurisdiction is authorized under Maryland's long arm statute . . . [and that] the exercise of jurisdiction comports with due process requirements of the Fourteenth Amendment." *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 14-15 (2005) (citations omitted). The "statutory

inquiry merges with [the] constitutional examination" because "the reach of the long arm statute is coextensive with the limits of personal jurisdiction." *Id*. at 22. "A court's exercise of personal jurisdiction over a nonresident defendant satisfies due process requirements if the defendant has 'minimum contacts' with the forum, so that to require the defendant to defend its interests in the forum state 'does not offend traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

With those principles in mind, we return to the case at bar. As mentioned, the issue of the circuit court's personal jurisdiction over Mona arose during the May 3, 2017 damages inquisition when the court, *sua sponte*, raised the issue. Randy's attorney was unprepared to address the issue at that time and, after presenting evidence on damages, was granted a continuance.

On July 25, 2017, Randy filed a supplemental memorandum addressing personal jurisdiction. He argued that Mona waived the defense of lack of personal jurisdiction when she filed her motion to vacate the order of default but did not move to dismiss for lack of personal jurisdiction. Alternatively, he maintained that the long arm statute conferred specific personal jurisdiction over Mona because she had "caused . . . tortious injury" to him "outside of the State by an act or omission outside the State," *i.e.*, her breach of fiduciary duty as personal representative, and the injury arose from her "persistent course of conduct in the State," *i.e.*, her prosecution of the Asbestos Case. CJP § 6-103(b)(4). He emphasized that Mona's contacts with Maryland, through her agents – the Napoli Defendants and the Keyes Defendants – in their conduct of the Asbestos Case

-10-

were extensive and persisted over a five-year period, culminating in the payment of settlement proceeds to her.

At the continued damages inquisition, Randy introduced into evidence an affidavit made by his attorney and attached exhibits, which included the certified docket entries from the Asbestos Case, as well as copies of numerous documents and pleadings filed in that case. The circuit court determined that it could exercise personal jurisdiction over Mona, without stating specific findings or reasons.

On appeal, Mona contends the court erred in so ruling because personal jurisdiction is not authorized under CJP section 6-103(b)(4) of the long-arm statute, and the exercise of jurisdiction would violate due process. She emphasizes that by the time of the damages inquisition, only two counts against Mona remained: Count I, asserting that Mona negligently failed to name Randy as a use plaintiff in the Asbestos Case, in violation of Md. Rule 15-1001, and Count II, alleging that, under North Carolina law, she breached her fiduciary duties as personal representative by failing to give notice pursuant to Md. Rule 15-1001 and failing to distribute to Randy the settlement proceeds from the Asbestos Case.[5] Mona asserts that Randy abandoned Count I at the damages inquisition hearing, arguing both in a May 3, 2017 damages memorandum and in open court that only the breach of fiduciary duty count was before the court. Thus, she maintains that the only issue properly before us is whether the court had personal jurisdiction over Mona

---

[5] Count IV, alleging that Mona was vicariously liable for the tortious acts and omissions of the Napoli Defendants and the Keyes Defendants, was no longer viable because of the dismissal of the claims against those defendants.

vis-à-vis her allegedly wrongful administration of the Estate.  In any event, she argues that the court lacked personal jurisdiction over her with respect to Counts I and II because her only contact with Maryland was the filing and prosecution of the Asbestos Case and that that was insufficient to confer jurisdiction.

Randy responds that Mona waived this issue by her failure to assert lack of personal jurisdiction as a defense in the circuit court pursuant to Rule 2-322(a).  Even if not waived, he asserts that the circuit court did not err by exercising personal jurisdiction over Mona because by filing complex asbestos litigation in the Circuit Court for Baltimore City, Mona, through her agents, "purposely availed . . . herself of the privilege of conducting activities in the State." (Quoting *Bond v. Messerman*, 391 Md. 706, 721-23 (2006)). Because Randy's claims arise from her acts and omissions relative to the settlement of that suit, he urges that it would be constitutionally reasonable to require her to litigate the instant action in the same forum.  He asserts, moreover, that he did not abandon Count I, but merely elected to pursue a theory of damages based on Count II.

We begin by disposing of the issue of waiver under Rule 2-322.  That rule states, in relevant part, that "[t]he following defenses shall be made by motion to dismiss *filed before the answer*, if an answer is required: (1) lack of jurisdiction over the person . . . . If not so made *and the answer is filed*, these defenses are waived."  Md. Rule 2-322(a) (emphasis added).  In the case at bar, Mona did not file an answer to the complaint. Rather, she sent her former attorney, Paul Napoli, a handwritten note claiming that her daughter had filed an answer to the complaint on her behalf and advising that she wanted to vacate the default order.  Mr. Napoli asked another attorney – Joseph Smith, Esq. – to

forward Mona's note to the circuit court, which he did. As discussed, the court denied the motion to vacate. There is no answer in the record. Having never filed an answer, Mona did not waive her right to assert the defense of lack of personal jurisdiction by her failure to assert it below. *See Smith v. Cylus*, 147 Md. App. 78, 81 (2002) (explaining that a plaintiff does not waive the mandatory defenses set forth in Rule 2-322 unless he or she files an answer without having asserted the defense).

With respect to the abandonment of Count I, for reasons explained *infra,* a decision is immaterial to the result we reach. Count I was based on common law negligence which was based on a violation of a Md. Rule. Count II was based on breach of fiduciary duty which was based on the same alleged violation and additional acts. Regardless of count, appellant relied on section 6-103(b)(4) and argued that the alleged tortious acts occurred out of State, causing tortious injury out of State.

We now turn to the thornier issue of whether the exercise of personal jurisdiction is authorized. Personal jurisdiction takes two forms: general jurisdiction and specific jurisdiction. For either type, a defendant "must maintain sufficient minimum contacts with the forum such that the exercise of jurisdiction meets the 'general test of essential fairness.'" *Republic Props. Corp. v. Mission West Props., LP*, 391 Md. 732, 760 (2006) (quoting *Presbyterian Univ. Hosp. v. Wilson*, 337 Md. 541, 551-52 (1995)). Specific jurisdiction may be established if "the defendant's contacts with the forum state form the basis for the suit[.]" *Beyond Systems*, 388 Md. at 26. "If the defendant's contacts with the State are not the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent contacts with the State." *Id*. at 22.

Randy does not suggest that Mona's contacts with Maryland were of the type sufficient to confer general jurisdiction over her. Rather, he argues that specific jurisdiction may be exercised because Mona's contacts with Maryland "form the basis for the suit[.]" *Beyond Systems*, 388 Md. at 26. The only contact Mona is alleged to have had with Maryland is the filing and prosecution of the Asbestos Case. In assessing whether Mona's conduct of the Asbestos Case gives rise to specific personal jurisdiction, we keep the language of the statute in mind, as we consider three prongs: "(1) the extent to which the defendant has purposefully availed [herself] of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* at 26 (*Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc*., 334 F.3d 390, 397 (4th Cir.2003)).

Under the first prong, Randy maintains that Mona purposely availed herself of the privilege of filing suit here and, as a result, has impliedly consented to being sued here on claims arising from that lawsuit. *See Neuralstem, Inc. v. Stemcells, Inc.*, 573 F.Supp.2d 888 (D. Md. 2008). In *Neuralstem,* a Delaware corporation headquartered in Maryland (Neuralstem), filed suit in the United States District Court for the District of Maryland against a Delaware corporation headquartered in California (Stemcells), seeking a declaratory judgment that a patent licensed by Stemcells was unenforceable, invalid and not infringed. Almost two years earlier, Stemcells had sued Neuralstem for patent infringement in the same court. The earlier case was stayed pending a reexamination of the patents by the United States Patent and Trademark Office ("USPTO") and remained

stayed when Neuralstem filed its suit. While the stay was pending, the USPTO issued two new patents to Stemcells, one of which was the subject of Neuralstem lawsuit.

Stemcells moved to dismiss for lack of personal jurisdiction. The district court denied the motion. It explained that many courts had "concluded that personal jurisdiction may be based upon implied consent or waiver when a non-resident files a claim in the forum state that involves the same transaction." *Id*. at 897. It reasoned that Stemcells had waived its right to contest personal jurisdiction, or had impliedly consented to being sued in Maryland, by "purpose[ly] avail[ing] itself of the privileges and benefits of [the Maryland forum] by filing the [prior] Maryland action, which involve[d] the same parties and [was] related to the same transaction or occurrence as the [matter before the court]." *Id*. at 898. The court noted, moreover, that the prior lawsuit and the current lawsuit were "significantly intertwined" and, concededly, involved "common operative facts." *Id*.

*Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F.Supp.2d 991 (W.D. Tenn. 2009) ("*Glassman*"), also is instructive. Three law firms – one based in New York, one based in California, and one based in Tennessee – entered into a joint venture to serve as co-counsel for plaintiffs in an anti-trust lawsuit filed in the United States District Court for the Western District of Tennessee. Another firm, based in Maine, later was appointed co-lead counsel along with the three other firms. The antitrust litigation ultimately was settled. Subsequently, the California and Tennessee based firms filed suit against the New York and Maine based firms, along with a third firm, alleging breaches of fiduciary duty and the covenant

of good faith and fair dealing relative to the joint venture agreement, seeking the imposition of a constructive trust, and seeking declaratory relief. The out-of-state law firm defendants all moved to dismiss for lack of personal jurisdiction. The district court denied the motion, ruling that it had specific personal jurisdiction over all the non-resident defendants. It reasoned that the defendants had "purposely availed themselves of the privilege of acting in Tennessee by prosecuting the protracted [antitrust litigation] in [the forum state]." *Id*. at 1003. The court emphasized that the joint venture agreement that was alleged to have been violated arose from activities in Tennessee, that the burden on the defendants would be minimal given their past litigation in the forum, and that Tennessee had a strong interest in adjudicating contractual disputes relative to legal services performed in the state.

We return to the case at bar. This case is unlike *Neuralstem* in that, there, the prior lawsuit involved the same legal and factual issues and the same parties. Here, the Maryland lawsuit was a toxic tort action against Edwin's former employers for injuries suffered by him as result of exposure to asbestos. The factual and legal issues underlying those claims bear no relation to the claims raised by Randy in his suit for negligent breach of Rule 15-1001 and for breach of fiduciary duty of North Carolina law.

*Glassman* is closer to the instant case in that the factual and legal issues in the case in which the defense of lack of personal jurisdiction was raised were related, but collateral to, the factual and legal issues in the prior lawsuit in the forum state. The law firms purposely availed themselves of the privilege of practicing law in Tennessee. The

record is silent as to whether Mona and Edwin, through their agents, had a choice as to where they filed the Asbestos Case.

We believe the decision in *Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc.*, 989 F. Supp. 265 (D.D.C. 1998), is consistent with the law of Maryland. In that case, Bracco Diagnostics, Inc. (Bracco), DuPont Merck Pharmaceutical Co. (DuPont Merck), ImaRx Pharmaceutical Corp. (ImaRx), and Sonus Pharmaceuticals, Inc. (Sonus), and Molecular Biosystems, Inc. (MBI), as defendant intervenor, sued the Food and Drug Administration (FDA) in the United States District Court for the District of Columbia. The plaintiffs alleged that the FDA treated their products as drugs while treating the products of a competitor, MBI, as a medical device. *See Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 20 (D.D.C. 1997). MBI filed a counterclaim raising patent law issues. Ultimately, the entire case was dismissed on the ground that the case was moot before the counterclaim was filed because the FDA acceded to the plaintiffs' request.

Mallinckrodt Medical, Inc. (Mallinckrodt), the marketer for MBI, and MBI filed in the same court a separate suit against Bracco, DuPont Merck, ImaRx, Sonus, and others seeking essentially the same relief, *i.e.* patent infringement claims, that MBI had sought in its earlier counterclaim. Sonus and ImaRx argued that the court lacked personal jurisdiction over them because their only contacts with the District of Columbia were to petition the FDA for approval of their products, protest to the FDA disparate treatment of their products, and file the lawsuit against the FDA. The court, *inter alia*, considered subsection (a)(4) of the long arm statute, the same as Maryland's, and concluded that the court lacked personal jurisdiction. The court explained that filing the earlier suit did not

constitute consent to be sued in the later action, filing the suit did not constitute doing business, there was no persistent course of conduct in the District of Columbia, and the patent issues did not arise from the earlier regulatory action.

We recognize that the District of Columbia is unique because it is the nation's capital, and an entity seeking redress of grievances from an agency of the federal government does not submit itself to jurisdiction under the long arm statute. *Mallinckrodt*, 989 F. Supp. at 271. Nevertheless, we conclude that the result is consistent with the law of Maryland. Ordinarily, the filing of a lawsuit does not constitute regularly doing business in Maryland and is not a persistent course of conduct in Maryland. *Cf. Stisser v. SP Bancorp, Inc.*, 234 Md. App. 593, 639-41 (2017) (holding that the "mere act of filing [articles of incorporation] in Maryland falls short of the grip of Maryland's long arm [statute]" particularly because the plaintiffs' claims only were "tangentially related" to that conduct).

We turn to the second prong of the specific jurisdiction test, "whether the plaintiffs' claims arise out of those activities directed at the State."  Here, one cause of action upon which Mona was sued – common law negligent breach of Rule 15-1001 – stemmed from her prosecution and settlement of the Asbestos Case.  The other cause of action (and the only claim upon which damages were awarded) arose from Mona's execution of her duties as personal representative of a North Carolina estate. During the hearing, Mona's counsel stated that there are two components to jurisdiction: the failure of attorneys to give notice under Rule 15-1001 and the breach of fiduciary duty that occurred in North Carolina and caused injury in North Carolina.  Counsel stated that the

former component had "gone by the wayside." As we explained earlier, the failure to give notice under Count I was also a part of Count II, as part of the alleged breach of fiduciary duty that occurred in North Carolina. The connection between Mona's breach of fiduciary duty in North Carolina and maintenance of the Asbestos Case is tenuous, especially with respect to the administration of the Estate.

The third prong concerns whether the exercise of jurisdiction is constitutionally reasonable. Under this prong, a court must consider and balance a variety of interests: "the burden on the defendant; the interests of the forum State; the plaintiff's interest in obtaining relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversy; and the shared interest of the several states in furthering fundamental substantive social policies." *Camelback Ski Corp. v. Behning*, 312 Md. 330, 338 (1988). There plainly is a practical burden on Mona occasioned by her residency in North Carolina, her age, and her alleged ill health. There is no allegation that she travelled to Maryland at any time during the prosecution of the Asbestos Case, relying instead upon her attorneys to act on her behalf here. Randy also would not be burdened by litigating in North Carolina given that he too resides there. Maryland has a legitimate interest in adjudicating claims for violations of its Rules of Procedure, but it has no interest in adjudicating the breach of fiduciary duty claims premised on North Carolina probate law. Moreover, considering the dismissal of the claims against the Keyes Defendants and the Napoli Defendants, there is no longer an efficiency interest in all the claims being adjudicated in the same forum. On balance, we conclude that the factors weigh against the constitutional reasonableness of causing Mona to defend the instant suit

-19-

in Maryland and, accordingly, shall hold that the circuit court erred by exercising personal jurisdiction over her. Thus, we shall remand with directions for the court to vacate the default judgment and enter an order dismissing the claims against Mona.

## CROSS-APPEAL

Before turning to the issues in the cross-appeal, we present some preliminary facts. On April 25, 2016, the Keyes Defendants moved to dismiss the complaint, or in the alternative, for summary judgment, attaching an affidavit and excerpts of the complaint in the Asbestos Case. On May 6, 2016, the Napoli Defendants moved to dismiss the complaint. The attorney defendants all argued that dismissal was appropriate on the negligence and negligent retention and supervision counts (Counts III, VIII, IX, and XIII) because the facts alleged did not support an inference that they owed Randy, who was not their client and was not an intended third-party beneficiary of the attorney-client relationship between them and Mona, a duty of care. They argued, moreover, that the claims for *respondeat superior* (Counts V and XVI), and successor liability (Count XII) were not independent causes of actions, and that the aiding and abetting negligence and aiding and abetting breach of fiduciary duty claims (Counts VI, VII, X, XI, XIV, and XV) were not cognizable under Maryland law.

A hearing on their motions was held on June 1, 2016. By amended order entered October 19, 2016, the court granted the motions to dismiss with prejudice. As pertinent, the court ruled that there was no attorney-client relationship between Randy, on the one hand, and the Napoli Defendants or the Keyes Defendants, on the other hand; that Randy lacked standing to sue as a third-party beneficiary of the attorney-client relationship

-20-

between Mona and her attorneys; that Randy lacked standing to sue for a violation of Rule 15-1001; and that Randy failed to state a claim upon which relief may be granted for negligence, negligent retention and/or supervision; aiding and abetting; or *respondeat superior*.

We review *de novo* a circuit court's decision to grant a motion to dismiss a complaint for failure to state a claim for which relief can be granted. *Gasper v. Ruffin Hotel Corp. of Md., Inc.,* 183 Md. App. 211, 226 (2008). "[W]e must assume the truth of the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from those allegations." *Adamson v. Corr. Med. Servs., Inc*., 359 Md. 238, 246 (2000). We "presume . . . the truth of all well-pleaded facts in the [c]omplaint, along with any reasonable inferences derived therefrom in a light most favorable to plaintiffs." *Pittway Corp. v. Collins*, 409 Md. 218, 234 (2009) (citation omitted). "[D]ismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." *Litz v. Md. Dept. of Env't*, 434 Md. 623, 639 (2013) (quoting *Arfaa v. Martino*, 404 Md. 364, 380–81 (2008) (citations omitted)).

## IV.

### Negligent Breach of Rule 15-1001

Randy contends the circuit court erred by dismissing his claims against the Napoli Defendants and the Keyes Defendants for negligence, negligent retention and supervision, and *respondeat superior* premised upon a breach of Rule 15-1001 because under the Statute or Ordinance Rule and/or third-party beneficiary jurisprudence, the

Rule creates a limited, ministerial duty of care owed by an attorney representing a wrongful death plaintiff to known potential wrongful death beneficiaries to name them as use plaintiffs.

The Napoli Defendants and the Keyes Defendants respond that the circuit court correctly ruled that Randy was not their client, and was not a third-party beneficiary of the attorney-client relationship between them and Mona, and that Rule 15-1001 does not impose an enforceable duty on attorneys representing a wrongful death plaintiff. We agree with the first two arguments and do not need to decide the third argument.[6]

As discussed, *supra*, Rule 15-1001 requires a party bringing a wrongful death action to name potential wrongful death beneficiaries in the complaint as use plaintiffs and to serve a copy of the complaint on them, along with a notice explaining their right to

---

[6] We have no need to decide whether violation of Rule 15-1001 constitutes evidence of negligence because Randy lacks standing. Maryland recognizes that, "in some instances, the duty of care in a negligence action may arise from statute or regulation." *Blackburn*, 438 Md. at 103. "[W]here there is an applicable statutory scheme designed to protect a class of persons which includes the plaintiff," a "defendant's duty ordinarily 'is prescribed by the statute' or ordinance and . . . the violation of the statute or ordinance is itself evidence of negligence." *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 78 (2003), *abrogated on other grounds by Ruffin Hotel Corp. of Md., Inc. v. Gasper*, 418 Md. 594 (2011) (quoting *Brown v. Dermer*, 357 Md. 344, 358 (2000)). Maryland appellate courts never have imposed a duty of care based upon a requirement set forth in the Maryland Rules of Procedure, however.

Moreover, as Randy points out in his brief, the 2012 amendments to Rule 15-1001 were precipitated by a request from a judge on the Court of Appeals asking the Standing Committee on Rules of Practice and Procedure to consider "whether any changes to the Rules pertaining to notice to use plaintiffs as a means of protecting statutory beneficiaries are necessary*." See One Hundred Seventy-Fourth Report of the Standing Committee on Rules of Practice and Procedure*, at 166 (July 26, 2012). In that context, the decision by the Rules Committee not to include in the proposed Rule a remedy for use plaintiffs who were not given notice or were given late notice militates against Randy's argument that violation of the Rule creates a substantive cause of action.

join the action. *Id*. at (d). The failure to name and notify a use plaintiff can result in dismissal of the action for failure to join a necessary party. *See* Md. Rule 2-211(a) ("a person who is subject to service of process shall be joined as a party in the action if in the person's absence . . . complete relief cannot be accorded among those already parties").

"To make out a cause of action for negligence, a plaintiff must prove that the defendant owed 'him (or to a class of which he is a part)' a duty of care; that the duty was breached; that the breach was a proximate cause of the harm suffered; and damages." *Cash & Carry Am., Inc. v. Roof Solutions, Inc.*, 223 Md. App. 451, 461 (2015) (quoting *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 531, 515 A.2d 756 (1986)). With respect to the first element, Maryland adheres to the "strict privity rule" for negligence actions premised on legal malpractice. *Flaherty v. Weinberg*, 303 Md. 116, 130 (1985); *see also Jacques*, 307 Md. at 537 ("no tort duty will be found absent a showing of privity or its equivalent"). Under that rule, "an attorney owes a duty to his client or employer, and therefore only that client or employer can recover against him for that breach." *Id*. at 127. The "sole exception" to that rule is the "third party beneficiary theory." *Id*. at 130. The third-party beneficiary exception is narrow; it does not apply to a plaintiff who "might conceivably derive some indirect benefit from the contractual performance of the attorney and his client." *Id*. Rather, it only applies when the non-client can show that "the client intended him to be a third-party beneficiary of the attorney's services and where his interests are identical to those of the client[.]" *Goerlich v. Courtney Indus., Inc.*, 84 Md. App. 660, 664 (1990).

In the case at bar, Randy was not a client of the Keyes Defendants or the Napoli Defendants. He presented no evidence that he was an intended beneficiary of the attorney-client relationship between Mona, on the one hand, and either the Keyes Defendants or the Napoli Defendants, on the other hand. Moreover, there often is not an identity of interests between a wrongful death plaintiff and a potential wrongful death beneficiary. *See Univ. of Md. Med. Sys. Corp. v. Muti*, 426 Md. 358, 384 (2012) ("By designating potential beneficiaries as use plaintiffs, counsel demonstrates that he or she does not represent them and has no authority to make decisions for them or to present evidence, including proof of damages, on their behalf. *To hold otherwise invites grave problems of conflict of interest*.") (emphasis added).

We also are not persuaded by Randy's argument that he was an intended beneficiary by implication through Rule 15-1001, for the limited purpose of being named a use plaintiff in the wrongful death count. He relies upon *Prescott v. Coppage,* 266 Md. 562 (1972). In that case, the trial court appointed a receiver for a savings and loan company and appointed an attorney to "aid him . . . in the performance of his duties as receiver," *i.e.,* in taking possession of the assets of the savings and loan company and distributing those assets to its creditors. *Id*. at 574. Under those unique facts, the Court of Appeals held that the creditors were intended third-party beneficiaries with standing to sue the attorney. *Id*.

No such facts are present in the case at bar. The Keyes Defendants and the Napoli Defendants were engaged directly by Mona to advocate for her interests as the wife of a deceased person. Their duties of competence, diligence, and loyalty flowed to her and,

with respect to the Keyes Defendants, to Edwin prior to his death. *See Flaherty*, 303 Md. at 131 ("a lawyer [must] represent his client zealously within the bounds of the law . . . and . . . the lawyer ordinarily [may] not represent or act for conflicting interests in a transaction"). Rule 15-1001 is a rule of procedure governing how a potential wrongful death beneficiary under CJP section 3-904 must be notified of their interests, and how they may join the action to share in any eventual recovery. The Rule does not explicitly or implicitly transform a statutory wrongful death beneficiary into a third-party beneficiary of the attorney-client relationship between the named plaintiff and his or her chosen counsel. *See Muti*, 426 Md. at 384 ("Rule 15-1001 cannot be construed to anoint counsel for the original (*i.e.* joined) plaintiffs as the attorney for the use plaintiffs as well").

For these reasons, Randy did not allege facts giving rise to a duty of care owed to him by the Keyes Defendants or the Napoli Defendants, and the claims for negligence, negligent retention and supervision, and *respondeat superior* properly were dismissed.

## V.

### Aiding and Abetting Mona's Breach of Rule 15-1001

Randy contends the circuit court erred by dismissing Counts VI, X, and XIV, which asserted claims against the Napoli Defendants and the Keyes Defendants for aiding and abetting Mona in her breach of Rule 15-1001, *i.e.*, her failure to name Randy as a use plaintiff. While Maryland does recognize "[a]ider and abettor tort liability," *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 200 (1995), Randy cites no cases recognizing a cause of action against an attorney, acting within the scope of his or

her employment, for aiding and abetting the alleged tortious conduct of his or her clients. We agree with the cross-appellees that to do so would undermine the "foundational requirements for a legal malpractice claim," discussed *supra*. *See generally Fraidin v. Weitzman*, 93 Md. App. 168, 235 (1992) ("It is established law that there can be no conspiracy between a principal and an agent where the agent acts within the scope of his or her employment."); *Havilah Real Prop. Servs., LLC v. Early*, 216 Md. App. 613, 633 (2014) ("Attorneys have a qualified privilege that protects them from potential civil liability to their clients' litigation adversaries, except where the attorneys act with actual malice, bad intent, or for the attorneys' personal benefit."). The circuit court properly dismissed Counts VI, X, and XIV.

## VI.

### Aiding and Abetting Mona's Breach of Fiduciary Duty under North Carolina Law

Randy contends the circuit court erred by dismissing Counts VII, XI, and XV, which asserted claims against the Keyes Defendants and the Napoli Defendants for aiding and abetting Mona in her breach of fiduciary duty under North Carolina law. He urges that North Carolina law establishes the underlying tort – breach of fiduciary duty – but that Maryland law governs aider or abettor liability.

The Keyes Defendants and the Napoli Defendants respond that because Maryland does not recognize breach of fiduciary duty as a stand-alone tort for damages, there can be no cause of action under Maryland law for aiding and abetting the commission of that tort. Alternatively, to the extent that North Carolina law would apply, because, as Randy

concedes, North Carolina does not recognize aider and abettor liability, he also fails to state a claim under North Carolina law.

We need not determine whether Maryland recognizes a cause of action for aiding and abetting a breach of fiduciary duty because, as discussed above, Maryland law is clear that a lawyer may not be liable to a non-client, such as Randy, for allegedly tortious conduct committed within the scope of performing his or her duties for his client. *Fraidin*, 93 Md. App. at 235. The aiding and abetting claims seek to hold the Keyes Defendants and the Napoli Defendants liable for the manner in which they distributed the settlement proceeds to Mona in the Asbestos Case, conduct that clearly fell within the scope of their representation of her. Thus, the claim is not proper under Maryland law.

As Randy recognizes, while North Carolina does recognize a stand-alone claim for breach of fiduciary duty, *see Melvin v. Home Fed. Savings & Loan Ass'n*, 482 S.E.2d 6 (N.C. App. 1997), it never has recognized a claim for civil aider and abettor liability, much less extended that theory to apply to an attorney acting within the scope of his or her representation of a client. Thus, Randy also fails to state a claim under North

Carolina law.  For these reasons, the circuit court did not err by dismissing Counts VII,

XI and XV.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AGAINST MONA PINNER VACATED AND CASE REMANDED WITH INSTRUCTIONS TO ENTER AN ORDER DISMISSING COUNTS I, II, AND IV OF THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION.  JUDGMENT DISMISSING COUNTS III, V, VI, VII, VIII, IX, X, XI, AND XII AFFIRMED.  COSTS TO BE PAID BY THE APPELLEE/CROSS-APPELLANT, RANDY PINNER.**