*Randy R. Pinner v. Mona H. Pinner, et al.*, No. 16, September Term, 2019, Opinion by Booth, J.

**COURTS – PERSONAL JURISDICTION – SPECIFIC JURISDICTION – CONSENT TO BE SUED –** The filing and prosecution in Maryland of a single toxic tort suit by a North Carolina resident and her late husband was not purposeful availment in the forum state that amounted to consent to be sued there.

**COURTS – PERSONAL JURISDICTION – SPECIFIC JURISDICTION – CONSTITUTIONAL REASONABLENESS –** It was not constitutionally reasonable for a Maryland court to exercise personal jurisdiction over a North Carolina resident based upon her prosecution of a prior Maryland lawsuit. The North Carolina resident did not travel to Maryland to prosecute the lawsuit but relied upon her lawyers to take all necessary actions there; the claims in the instant suit are not connected to the claims raised in the tort suit; and the ultimate resolution of the claims in the instant suit involve the application of North Carolina law.

**COURTS – PERSONAL JURISDICTION – SPECIFIC JURISDICTION – APPLICATION OF "OTHER COURSE OF CONDUCT" PROVISION OF MARYLAND LONG ARM STATUTE –** The filing of a single lawsuit did not constitute a "course of conduct" under subsection (b)(4) of Maryland's long arm statute, Courts and Judicial Proceedings Article ("CJ") § 6-103; the lawsuit constituted a limited, discrete quantum of activity.

IN THE COURT OF APPEALS

OF MARYLAND

No. 16

September Term, 2019

RANDY R. PINNER

v.

MONA H. PINNER, et al.

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Wilner, Alan M. (Senior Judge,
   Specially Assigned),

JJ.

Opinion by Booth, J.
Getty and Wilner, JJ., dissent.

Filed: March 3, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case requires the determination of whether the Circuit Court for Baltimore City erred in exercising *in personam* jurisdiction over the defendant, Mona Pinner, a North Carolina resident. The case was filed by Randy Pinner, Mona's[1] stepson, who is also a North Carolina resident. In the proceedings below, Randy obtained a default judgment against Mona, in the amount of nearly $100,000.

Prior to the instant litigation, Edwin Pinner, Mona's late husband and Randy's father, and Mona, filed suit in the Circuit Court for Baltimore City, seeking damages for personal injuries caused by Edwin's asbestos exposure (the "Asbestos Case"). After Edwin's death from mesothelioma, the Asbestos Case was converted to a wrongful death and survival action on behalf of Mona, individually, and as personal representative of the Estate of Edwin F. Pinner ("the Estate"). Mona and Edwin were represented by Mary H. Keyes, Esq., and the Keyes Law Firms, LLC (collectively, "the Keyes Defendants"). Approximately two years after the Asbestos Case was filed, by agreement with Ms. Keyes, the law firm of Napoli Bern Ripka Shkolnick & Associates, LLP ("the Napoli Firm") assumed responsibility for the case.

After Mona added a wrongful death claim to the Asbestos Case, she failed to timely serve notice on Randy, pursuant to Maryland Rule 15-1001, and she did not name him as a use plaintiff. When Randy was subsequently notified of the suit, he moved to intervene, but was barred from doing so by the statute of limitations. Mona settled the Asbestos Case

---

[1] For ease of discussion, we shall refer to the Pinners by their first names.

with certain defendants, and she received settlement proceeds, but did not deposit those funds into Edwin's Estate in North Carolina.

Consequently, Randy filed the instant action in the Circuit Court for Baltimore City asserting claims of negligence against Mona, the Keyes Defendants, and the Napoli Defendants, as well as claims for aiding and abetting, negligent retention and supervision, and *respondeat superior* against some of the Keyes Defendants and the Napoli Defendants. The circuit court granted motions to dismiss for failure to state a claim upon which relief could be granted against the Keyes Defendants and the Napoli Defendants.

Mona failed to respond and Randy's request for an order of default was granted. After Mona unsuccessfully moved to vacate the order of default, the court held a damages inquisition hearing over two days, determined that it had personal jurisdiction over Mona, and entered a default judgment in favor of Randy for $99,856.84.

In a reported opinion, the Court of Special Appeals reversed the circuit court's decision with respect to the finding of personal jurisdiction and remanded the case with direction that the circuit court vacate the default judgment and enter an order dismissing the claims against Mona for lack of jurisdiction. *Pinner v. Pinner*, 240 Md. App. 90, 98 (2019). The Court of Special Appeals affirmed the dismissal of the claims against the Keyes Defendants and the Napoli Defendants. *Id.*

Randy petitioned for writ of *certiorari*, which we granted to consider the following question, which we have rephrased:[2]

---

[2] The question presented in the petition for writ of *certiorari* was:

Did the circuit court err by exercising personal jurisdiction over Mona?

For the reasons set forth within, we hold that the circuit court erred in exercising personal jurisdiction over Mona and we affirm the decision of the Court of Special Appeals.

## I. BACKGROUND

The Court of Special Appeals succinctly summarized the relevant facts in its reported opinion in the present case, *Pinner*, 240 Md. App. at 98–103, which we paraphrase as follows.

In 1952 and 1953, Edwin Pinner was exposed to asbestos while working at an insulating plant in Baltimore, Maryland. In August 2009, Edwin was diagnosed with mesothelioma. He lived with his wife, Mona, in North Carolina. Edwin had one biological son, Randy, from a prior marriage who also lives in North Carolina.

On February 23, 2010, Edwin and Mona, through counsel[3], filed suit in the Circuit Court for Baltimore City against numerous defendants, including two of Edwin's former

Did the Circuit Court for Baltimore City abuse its discretion in holding that an out-of-state defendant had sufficient contact through her attorneys for specific personal jurisdiction under the Maryland long arm statute for failing to name a use plaintiff and give the notice required by Md. Rule 15-1001 in a protracted, still continuing wrongful death case that the out-of-state resident initiated in the same Maryland court and from which she received hundreds of thousands of dollars in settlements?

[3] At all times during the pendency of the Asbestos Case, Edwin and Mona were represented by counsel. In September 2009, Edwin and Mona retained the services of Mary H. Keyes, Esq. and the Keyes Law Firms, LLC. In March 2012, Ms. Keyes entered into an agreement with Napoli Bern Ripka Shkolnik, LLP ("the Napoli Firm") whereby they agreed to assume responsibility for all aspects of the Asbestos Case.

3

employers headquartered in Baltimore City—Continental Wire and Inland Steel—alleging that he had been directly exposed to asbestos while working for those companies. During discovery, Edwin and Mona identified Randy as Edwin's only biological son in answers to interrogatories.

In October 2010, eight months after suit was filed, Edwin died from mesothelioma. In December 2010, Mona was appointed personal representative of Edwin's Estate in the General Court of Justice, Superior Court Division, Buncombe County, North Carolina. She listed the Asbestos Case as property of the Estate.

Two and one-half years after Edwin died, on April 24, 2013, Mona, through counsel, amended her complaint to add a claim for wrongful death. In Maryland, "[o]nly one action" shall lie for the wrongful death of a person and it "shall be for the benefit of the wife, husband, parent and child of the deceased person." Md. Code (1974, 2013 Repl. Vol., 2019 Cum. Supp.), Courts and Judicial Proceedings Article ("CJ"), § 3-904(a)(1); (f). Pursuant to Maryland Rule 15-1001(b), "[a]ll persons who are or may be entitled by law to claim damages by reason of the wrongful death shall be named as plaintiffs whether or not they join in the action." If a potential wrongful death beneficiary is not joined in the action, the words "to the use of" should precede their name. Md. Rule 15-1001(b). The party bringing the wrongful death action is required to serve a copy of the complaint on each use plaintiff, along with a notice explaining their right to join the action. Md. Rule 15-1001(d). Randy was not named as a use plaintiff in the amended complaint nor was he

4

served with a copy of the amended complaint or the notice required by Maryland Rule 15-1001(d).[4]

Over a year later, in June 2014, two of the defendants in the Asbestos Case moved to dismiss the wrongful death count of the amended complaint on the ground that Mona had failed to name Randy as a use plaintiff. In response to that motion, in July 2014, Mona, through counsel, filed by consent a second amended complaint. The second amended complaint substituted Mona, individually and as personal representative of the Estate, as the only plaintiff, and added Randy as a use plaintiff in the wrongful death count. In July 2014, three years and eight months after Edwin's death, Mona, through counsel, served Randy with a copy of the complaint and the Rule 15-1001(d) notice. Within 60 days,

---

[4] The notice required by Maryland Rule 15-1001(d) provides as follows:

> You may have a right under Maryland law to claim an award of damages in this action. You should consult Maryland Code, § 3-904 of the Courts Article for eligibility requirements. Only one action on behalf of all individuals entitled to make a claim is permitted. If you decide to make a claim, you must file with the clerk of the court in which this action is pending a motion to intervene in the action in accordance with the Maryland Rules no later [than] the earlier of (1) the applicable deadline stated in § 3-904(g) and § 5-201(a) of the Courts Article ["the statutory deadline"] or (2) 30 days after being served with the complaint and this Notice if you reside in Maryland, 60 days after being served if you reside elsewhere in the United States, or 90 days after being served if you reside outside of the United States [the "served notice deadline"]. You may represent yourself, or you may obtain an attorney to represent you. If the court does not receive your written motion to intervene by the earlier of the applicable deadlines, the court may find that you have lost your right to participate in the action and claim any recovery.

5

Randy moved to intervene in the Asbestos Case. The defendants opposed his intervention on the ground that his claim was barred by the applicable statute of limitations. In October 2014, the circuit court entered an order permitting Randy to intervene for the limited purpose of conducting discovery related to the statute of limitations issue. In July 2015, the circuit court entered an order denying his motion to intervene as being barred by the applicable statute of limitations.

## II. PROCEEDINGS BELOW

In January 2016, Randy filed the instant case against Mona and her attorneys in the Circuit Court for Baltimore City. Randy alleged sixteen counts against Mona and her attorneys[5] based on their failure to name him as a use plaintiff and provide him with notice of the wrongful death action under Maryland Rule 15-1001. Although both Randy and Mona resided in North Carolina and the law firms were organized in New York and Delaware, Randy filed the suit in Maryland. Randy alleged personal jurisdiction over the parties under Maryland's long arm statute, CJ § 6-103.

---

[5] The various law firms and attorneys who were named as defendants in the proceedings below were Mary H. Keyes and the Keyes Law Firm, LLC ("Keyes Defendants") and Napoli Bern Ripka Shkolnik, LLP, Napoli Bern Ripka Shkolnik & Associates, LLP, Napoli Bern, LLP, Napoli Bern & Associates, LLP, Napoli Bern Ripka, LLP, Napoli Bern Ripka & Associates, LLP, Law Offices of Napoli Bern Ripka, Shkolnik, LLP, Law Offices of Napoli Bern Ripka & Associates, LLP, Law Offices of Napoli Bern, LLP, Paul J. Napoli, Marc J. Bern, Alan S. Ripka, Hunter J. Shkolnik, Ethan Horn, Napoli Shkolnik, PLLC, Napoli Shkolnik & Associates, PLLC, Napoli Shkolnik, LLP, Bern Ripka, LLP, Paul Napoli Law, PLLC, Marc Bern Law, PLLC, Marie Kaiser, PLLC, Napoli Law, PLLC, Napoli & Partners, PLLC, Hunter J. Shkolnik Attorney at Law, PLLC, and Jason M. Weiner ("Napoli Defendants").

Counts I, II, and IV pertained to Mona, individually and as personal representative of the Estate. Count I asserted that Mona negligently failed to name Randy as a use plaintiff in violation of Maryland Rule 15-1001. Count II alleged that she breached her fiduciary duties as personal representative of the Estate under North Carolina law by failing to provide notice under Maryland Rule 15-1001 and failing to distribute a share of the settlement monies from the Asbestos Case to Randy, a statutory beneficiary of the Estate. Count IV alleged that Mona was vicariously liable for the tortious acts and omissions of her attorneys.

Counts II, V, VI, VII, VIII, IX, X, XI, and XII all pertained to the law firms representing Mona. The claims against the law firms and individual attorneys included negligence for failure to name Randy as a use plaintiff, negligent retention and supervision, aiding and abetting Mona's breach of Maryland Rule 15-1001 and her breach of fiduciary duty, and vicarious liability for the tortious conduct and omissions of individual attorneys.

The law firms moved to dismiss the counts filed against them. After a hearing, the circuit court granted the law firms' motions to dismiss with prejudice. The court found that there was no attorney-client relationship to provide Randy with standing to sue as a third-party beneficiary between Mona and her attorneys. Further, the court found that Randy failed to state a claim for the remaining counts because Maryland law did not recognize the claims as independent causes of action or cognizable under Maryland law.

Randy served Mona with private process in North Carolina on March 14, 2016. Mona failed to file a responsive pleading. On November 28, 2016, Randy filed a request for an order of default, which the circuit court granted. The court sent Mona a notice of

7

the order and advised her that she could move to vacate the order within 30 days. Through her attorney, Mona moved to vacate the order on February 22, 2017. The circuit court denied her motion and set a damages inquisition hearing.

In March 2017, Randy filed an inquisition hearing memorandum that focused on the applicability of the law of North Carolina. The memorandum summarized North Carolina statutes concerning the authority of a personal representative to bring a wrongful death action and the beneficiaries to such an action, the fiduciary duties applicable under North Carolina law, and argued that the law governing fiduciary duties in North Carolina must govern because Edwin was domiciled in North Carolina at the time of his death, and the events giving rise to the tort action against Mona occurred in North Carolina. Randy further stated that North Carolina law provides for a cause of action in tort against a personal representative or trustee for breaches of fiduciary duty and recognizes a claim for damages as a result. He cited to North Carolina statutes for the amount of recovery to which he believed that he was entitled under the North Carolina Intestate Succession Act and submitted damages calculation worksheets outlining the amount to which he contended he was entitled.

On May 3, 2017, the court held a damages inquisition hearing. Randy appeared with counsel (as did representatives of the defendant law firms), but Mona did not appear. The circuit court *sua sponte* raised the issue of personal jurisdiction, and then granted a continuance to allow Randy's counsel to brief the issue of personal jurisdiction. Prior to the continuance, the court heard arguments from Randy's counsel and received evidence of the damages allegedly incurred by Randy. On the damages issue, Randy's counsel noted

8

that the part of the case alleging Mona's negligence arising out of the Maryland rule violation had "fallen by the wayside in a sense[]" and that the damages portion of the case focused on Mona's breach of her fiduciary duties under North Carolina law. The evidence presented to the trial court on the issue of damages consisted of: Randy's testimony; an affidavit signed by Randy; a certified copy of portions of the North Carolina probate file; and two affidavits of Mona's counsel reflecting the amounts of the payments that Mona received from the settlement.[6]  The only testimony was from Randy. In response to questions by counsel, Randy testified that Edwin passed away on October 30, 2010, that he was his father's only child, and that he had not received any payments from Mona since his father passed away.

The hearing resumed on July 26, 2017. Randy's counsel attended. Mona again did not appear. At the outset, the court determined that it had jurisdiction over Mona and heard arguments on damages.[7]  After the court concluded that it had jurisdiction, Randy's counsel summarized North Carolina probate law and Mona's fiduciary duties as the personal representative of the North Carolina Estate.  Randy's counsel provided damages calculation worksheets based upon North Carolina statutes.  At the end of the hearing, the court ordered Mona to pay Randy $99,856.84, representing one-half of the settlement

---

[6] The affidavits of counsel were filed under seal due to the confidentiality provisions of the settlement.

[7] The trial court did not make any findings on the record concerning the jurisdictional issue. Rather, the court simply stated that it would accept Randy's counsel's memorandum on jurisdiction and that "the Court accepts jurisdiction and I no longer have a question concerning it."

proceeds on the wrongful death claim, less a $60,000 spousal deduction under North Carolina law. The parties filed a timely appeal and cross-appeal.

On the issue of personal jurisdiction, the Court of Special Appeals considered whether Mona's sole contact with Maryland—the filing and prosecution of the Asbestos Case—was sufficient to establish specific jurisdiction under the Maryland long arm statute, CJ § 6-103(b)(4), and comported with due process. *Pinner v. Pinner*, 240 Md. App. 90, 107 (2019). Consistent with our jurisprudence on matters concerning specific jurisdiction and due process considerations, the Court of Special Appeals analyzed Mona's contact within the three-prong framework outlined in *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 22 (2005). *Pinner*, 240 Md. App. at 107. The Court of Special Appeals held that Mona had insufficient contacts with Maryland to justify the exercise of specific jurisdiction. *Id.* at 113. The Court of Special Appeals remanded the case with directions for the court to vacate the judgment and enter an order dismissing the claims against Mona.[8] *Id.*

Randy petitioned for writ of *certiorari*, which we granted. For the reasons set forth herein, we affirm the judgment of the Court of Special Appeals.

---

[8] The Court of Special Appeals also considered a cross-appeal by Randy, who contended that the circuit court erred in dismissing his claims against Mona's former attorneys—the Keyes Defendants and the Napoli Defendants. The intermediate appellate court affirmed the circuit court's dismissal of all claims against these defendants. *Pinner v. Pinner*, 240 Md. App. 90, 115 (2019). The dismissal of the claims against the Keyes Defendants and the Napoli Defendants are not part of this appeal.

10

*A. Standard of Review*

The defense of lack of personal jurisdiction is a question of law. *See CSR, Ltd. v. Taylor*, 411 Md. 457, 472 (2009) (noting that the issue of personal jurisdiction is typically collateral to the merits). Accordingly, we review *de novo* a trial court's legal conclusion as to whether the trial court may exercise personal jurisdiction over a defendant. *Dynacorp Ltd. v. Aramtel Ltd.*, 208 Md. App. 403, 477 (2012). Randy, as the plaintiff, bears the burden of establishing personal jurisdiction. *See CSR, Ltd.*, 411 Md. at 467 n.2; *see also Beyond Sys.*, 388 Md. at 11 (noting that the plaintiff must make a *prima facie* showing of personal jurisdiction by a preponderance of the evidence).

*B. Parties' Contentions*

Randy alleges that Mona's act of filing and prosecuting the Asbestos Case constitutes a "persistent course of conduct" under subsection (b)(4) of the long arm statute, CJ § 6-103. Randy maintains that the complexity of the case, combined with its duration, supports a finding that Mona's conduct is sufficient to be considered a "persistent course of conduct." Randy also contends that he has satisfied the three-prong constitutional analysis outlined in *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 22 (2005), and urges the Court to rely upon out-of-state cases where litigation activities were found to be sufficient to satisfy due process concerns. Randy argues that Mona purposefully availed herself of the benefits and protections of Maryland law by engaging in significant litigation activities within Maryland for over six years, which resulted in a substantial monetary payment. Recognizing that there is no evidence in the record that

11

Mona traveled to Maryland in connection with this case, Randy asserts that Mona's attorneys' conduct is sufficient to establish jurisdiction over her under the principles of agency.

Additionally, Randy alleges that Mona failed to meet her burden that the exercise of personal jurisdiction violated due process. Randy contends that he established Mona's minimum contacts with the state and, thus, the burden shifted to Mona to demonstrate that the exercise of jurisdiction would not comport with fair play and substantial justice.

Conversely, Mona contends that neither the Maryland long arm statute nor due process authorize a Maryland court to exercise personal jurisdiction over her in connection with Randy's suit. Mona argues that the filing of one lawsuit cannot be considered a persistent course of conduct. Further, Mona contends that even if the lawsuit met the requirements of Maryland's long arm statute, due process prevents the court's exercise of personal jurisdiction. Mona asserts that the filing of one lawsuit does not rise to the level of sufficient contacts with Maryland, that the Asbestos Case is only tangentially related to the current suit, and that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. Therefore, Mona contends that the Court of Special Appeals correctly found the circuit court's exercise of personal jurisdiction to be in error.

### *C. Analysis*

This case requires us to examine whether Mona's act of filing and prosecuting the Asbestos Case created sufficient contacts with the State to enable a Maryland court to exercise personal jurisdiction over her. When faced with the issue of whether a Maryland

court may exercise personal jurisdiction over an out-of-state defendant, our inquiry involves dual and overlapping considerations. "We consider whether the requirements of Maryland's long-arm statute are satisfied." *CSR, Ltd.*, 411 Md. at 472 (footnote omitted); *Bond v. Messerman*, 391 Md. 706, 721 (2006). We also consider "whether the exercise of personal jurisdiction comports with the requirements imposed by the Due Process Clause of the Fourteenth Amendment." *CSR, Ltd.*, 411 Md. at 473. Both considerations must be satisfied to find an exercise of personal jurisdiction to be proper.

In analyzing the parties' contentions, we recognize that the statutory and constitutional components of our inquiry are not mutually exclusive. Rather, as this Court has held on numerous occasions, "the long arm statute represents an effort by the Legislature to expand the boundaries of permissible *in personam* jurisdiction to the limits permitted by the Federal Constitution." *Id.* (quoting *Geelhoed v. Jensen*, 277 Md. 220, 224 (1976)); *see also Beyond Sys.,* 388 Md. at 22. "Because we have consistently held that the reach of the long arm statute is coextensive with the limit of personal jurisdiction delineated under the Due Process Clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination." *Beyond Sys.*, 388 Md. at 22; *see also Mohamed v. Michael,* 279 Md. 653, 658 (1977) ("It is within the context of these constitutional requirements that we have interpreted the meaning of 'transacts any business' as used in subsection (b) (1) of the long-arm statute."). It is therefore necessary to interpret the statute within the confines of the constitutional limitations, rendering an interpretation consistent with those limitations. *See Geelhoed*, 277 Md. at 223; *Lamprecht v. Piper Aircraft Corp.*, 262 Md. 126, 130 (1971).

13

Personal jurisdiction satisfies the Fourteenth Amendment's due process requirements "if the defendant has 'minimum contacts' with the forum state, so that requiring the defendant to defend its interests in the forum state 'does not offend traditional notions of fair play and substantial justice.'" *Beyond Sys.*, 388 Md. at 22 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Cases are divided into two categories depending upon a defendant's contacts with the State: specific jurisdiction or general jurisdiction. *CSR, Ltd.*, 411 Md. at 477; *Beyond Sys.*, 388 Md. at 22. "To establish general jurisdiction, the defendant's activities in the State must have been 'continuous and systematic.'" *Beyond Sys.*, 388 Md. at 22 (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctr., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003)) (additional citations omitted). Specific jurisdiction cases arise "where the cause of action arises from, or is directly related to, the defendant's contacts with the forum state." *CSR, Ltd.*, 411 Md. at 477 (citing *Presbyterian Univ. Hosp. v. Wilson*, 337 Md. 541, 541 (1995); *Camelback Ski Corp. v. Behning*, 312 Md. 330, 339 (1988) (*Camelback II*)). In other words, "the defendant's contacts with the forum state form the basis for the suit[.]" *Beyond Sys.*, 388 Md. at 26.

In this case, Randy does not contend that Mona's contacts with Maryland were sufficient to establish general jurisdiction over her. Rather, he contends that specific jurisdiction may be exercised because Mona's contacts with Maryland "form the basis for the suit[.]" *Id.* Because Randy concedes that Maryland lacks general jurisdiction over Mona, our analysis is limited to whether the requirements for specific jurisdiction are satisfied under the long arm statute and whether they comport with due process considerations.

14

Randy's sole assertion of specific jurisdiction is limited to one subsection of Maryland's long arm-statute, CJ § 6-103(b)(4), which provides as follows:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> . . .
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

As noted above, Randy alleges Mona's only contact with Maryland is the filing and prosecution of the Asbestos Case. We must determine whether Mona's act of filing a lawsuit in Maryland constitutes "engag[ing] in any other persistent course of conduct in the State" under the long arm statute, and is within constitutional limitations. *Geelhoed*, 277 Md. at 223 (citing *Lamprecht*, 262 Md. at 130). In other words, "if to exercise . . . jurisdiction in a given case, would violate Due Process, we construe our long arm statute as not authorizing the exercise of personal jurisdiction over the defendant." *CSR, Ltd.*, 411 Md. at 475–76 (quoting *Bond*, 391 Md. at 721).

Accordingly, as the Court of Special Appeals correctly noted in its reported opinion below, in assessing whether Mona's conduct in the Asbestos Case gave rise to specific jurisdiction and comports with due process, we analyze the statute as we consider the three prongs adopted by this Court in *Beyond Systems*: "(1) the extent to which the defendant has purposefully availed [herself] of the privilege of conducting activities within the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3)

15

whether the exercise of personal jurisdiction would be constitutionally reasonable." *Pinner*, 240 Md. App. at 107 (quoting *Beyond Sys.*, 388 Md. at 26; *Carefirst,* 334 F.3d at 397).

Finally, it is worth noting that this coextensive constitutional and statutory analysis is a fact-intensive inquiry and there is no "one-size fits all" answer to these jurisdictional issues. As the United States Supreme Court observed, the determination of whether a defendant has maintained sufficient minimum contacts with the forum state is "one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 92 (1978) (quoting *Estin v. Estin*, 334 U.S. 541, 545 (1948)). In *Presbyterian University Hospital v. Wilson*, 337 Md. 541, 552 (1995), we noted that in contrast to general jurisdiction, an analysis of specific jurisdiction

> involves more of an expanded factual inquiry into the precise nature of the defendant's contacts with the forum, the relationship of these contacts with the cause of action, and a weighing of whether "the nature and extent of the contacts . . . between the forum and the defendant . . . satisfy the threshold demands of fairness."

*Id.* (quoting *Camelback II*, 312 Md. at 336). Considering this, we turn to Randy's contentions and Mona's contacts with Maryland.

### *Due Process Considerations*

### 1. Purposeful Availment Analysis

With respect to the first prong of our due process analysis, Randy contends that there are sufficient facts in the record reflecting that, operating through her attorneys, Mona

16

had sufficient contacts with Maryland and that her wrongful act—her failure to name Randy as a use plaintiff under Maryland Rule 15-1001—arose out of and related to her contacts in Maryland. Randy asserts that he has satisfied the "purposeful availment" requirement because Mona deliberately engaged in significant litigation activities for over six years, resulting in her receiving significant monetary benefits through settlement payments received in the Asbestos Case.

The United States Supreme Court explained the rationale behind the "purposeful availment" requirement in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985):

> T[he] "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. Thus, where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the "benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

(Citations and footnotes omitted).

A factor related to purposeful availment is "foreseeability" or "notice," *i.e.* that the defendant, in purposefully availing himself or herself of the privilege of conducting activities within the forum State, "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980); *see also*

17

*CSR, Ltd.*, 411 Md. at 480 (noting that foreseeability alone is not sufficient where a person would not reasonably anticipate being haled into court in that state).

This case presents a unique set of facts. Mona deliberately engaged in an activity in Maryland through her attorneys' act of prosecuting the Asbestos Case. The tortious conduct alleged by Randy arises out of a failure to comply with a Maryland Rule of Procedure in the Asbestos Case. However, Randy failed to produce any evidence that Mona traveled to Maryland in connection with the Asbestos Case, which her attorneys resolved by settlement, without a trial. There is no evidence in the record that Mona was deposed or otherwise participated in the proceeding.[9] The docket entries and pleadings in the Asbestos Case that Randy submitted as evidence in this case reflect that Mona and Edwin's attorneys filed an initial complaint, answered interrogatories (which the attorneys

---

[9] In an attempt to establish that Mona's litigation efforts constituted "significant activities" in Maryland, Randy's counsel submitted to the trial court a copy of the docket entries in the Asbestos Case, together with the following pleadings that were electronically filed in the Asbestos Case: (1) the initial Complaint filed by Edwin and Mona filed on February 23, 2010; (2) Plaintiffs' Amended Answers to Defendants' Master Set of Interrogatories; (3) Suggestion of Death and Notice of Substituting Party filed on March 14, 2012; (4) Amended Complaint filed on April 24, 2013; (5) Plaintiff's Consent Motion for Leave to Amend to Add Use Plaintiff filed on July 7, 2014; (6) Amended Complaint filed on July 8, 2014; (7) Notice to Use Plaintiff Randy Pinner pursuant to Rule 15-1001(d) filed on July 10, 2014; and (8) Notice of Appearances of Aaron M. Graham filed on behalf of Edwin Pinner on December 16, 2015. As part of this appeal, Randy requests that the Court take judicial notice of the pleadings filed in the Asbestos Case pursuant to Md. Rule 5-201(f). As discussed *infra*, the docket entries and pleadings reflect that the Asbestos Case was a routine asbestos case and was not unusually complex. Additionally, the docket entries do not reflect any participation in the litigation by Mona (other than the pleadings filed by her counsel) or any physical presence by her at any hearing, deposition or proceeding in Maryland.

signed on Edwin's and Mona's behalf), and, subsequently, filed an amended complaint after Edwin's death.

Although Randy's lawsuit involved multiple counts against Mona and her attorneys, the claims against the attorneys were dismissed, leaving Mona as the sole defendant. Both remaining parties, Randy and Mona, reside in North Carolina. The alleged injury to Randy arose in North Carolina. The resolution of this case involved the entry of a default judgment by a Maryland court against a North Carolina resident based upon the application of North Carolina probate law. At the damages hearing, Randy's counsel made it clear that he was claiming damages on a theory arising from the breach of fiduciary duty count under North Carolina law. The only testimony was from Randy. Randy's counsel summarized Mona's fiduciary duties arising from North Carolina law, entered records from the North Carolina probate file into evidence with the circuit court, provided the court with worksheets summarizing Randy's proposed damages under North Carolina probate law, and requested that the circuit court enter judgment based upon the application of North Carolina law.

Based upon these facts, we hold that Randy has not established a *prima facie* case that Mona formed a "substantial connection" with Maryland through the filing and prosecution of the Asbestos Case such that she should "reasonably anticipate being haled into Court" in Maryland to defend a claim alleging breach of fiduciary duties in connection with her status as a personal representative of a North Carolina estate arising out of North Carolina law. *CSR, Ltd.*, 411 Md. at 464 ("In Maryland, a substantial connection will be established if Petitioner either engaged in significant activities in the State or created

19

continuing obligations with the State's residents, thus taking advantage of the benefits and protections of Maryland law."). Although Mona clearly received a benefit from her litigation efforts in Maryland (by receipt of the settlement payments), her limited act of filing and prosecuting the Asbestos Case does not constitute engaging in "significant activities." Filing suit also did not create "continuing obligations" between herself and the forum state, sufficient to now require her to submit to the burdens of litigation in Maryland, particularly where the claims, brought by a North Carolina resident, arise under North Carolina law in connection with the administration of a North Carolina estate.

Randy cites to several cases where personal jurisdiction was exercised over a non-resident defendant based upon previous litigation activities in the forum state. *Neuralstem, Inc. v. Stemcells, Inc.*, 573 F. Supp. 2d 888 (D. Md. 2008); *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991 (W.D. Tenn. 2009); *Rusakiewicz v. Lowe*, 556 F.3d 1095 (10th Cir. 2009). He urges us to rely upon those cases as support for exercising personal jurisdiction over Mona here. As noted *supra*, whether a defendant has sufficient contacts with a forum state in a particular case is a fact-intensive inquiry and there is no "one size fits all" answer. We find the cases Randy relies upon to be factually distinguishable.

In *Neuralstem, Inc. v. Stemcells, Inc.*, 573 F. Supp. 2d 888, 889–90 (D. Md. 2008), a Delaware corporation headquartered in Maryland (Neuralstem) filed suit in the United States District Court for the District of Maryland against a Delaware corporation headquartered in California (Stemcells) seeking a declaratory judgment that a patent licensed by Stemcells was unenforceable, invalid, and not infringed. Almost two years

20

earlier, Stemcells had sued Neuralstem for patent infringement in the same court. *Id.* at 890. The district court denied Stemcells' motion to dismiss for lack of personal jurisdiction because it had "concluded that personal jurisdiction may be based upon implied consent or waiver when a non-resident files a claim in the forum state that involves the same transaction." *Id.* at 897. Under the facts of that case, the prior lawsuit involved the same legal and factual issues and the same parties. *Id.* at 888. In analyzing the claims, the court noted that Stemcells admitted that the previous suit and the second suit involved the "same transaction" or "the same nucleus of operative facts." *Id.* The court found that the two actions were "significantly intertwined," that the patents were virtually identical, and that both actions stemmed from the facts involving Stemcells' activities related to the patents. *Id.* at 898.

By contrast, the Asbestos Case and the instant case do not involve the same parties. Additionally, the claims in the Asbestos Case and the claims that Randy is pursuing against Mona in this case are not "significantly intertwined" and do not involve the same nucleus of operative facts. Although Randy argues that the cases are "significantly intertwined," it is clear from the evidence that he presented at the damages hearing that the cases are not. The Asbestos Case was a toxic tort action against Edwin's former employers for injuries suffered by him as a result of exposure to asbestos. The factual and legal issues underlying those claims bear no relation to the claims raised by Randy in his suit against Mona for negligent failure to comply with Maryland Rule 15-1001 and for breach of duty under North Carolina law.

21

*Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991 (W.D. Tenn. 2009), is also distinguishable. In that case, three law firms—one based in New York, one based in California, and one based in Tennessee—entered into a joint venture to serve as co-counsel for plaintiffs in an antitrust law suit filed in the United States District Court for the Western District of Tennessee. *Id.* at 995. Another firm, based in Maine, was later appointed co-lead counsel, along with the three other firms. *Id.* The antitrust litigation ultimately settled. *Id.* at 996. Subsequently, the California and Tennessee based firms filed suit in the United States District Court for the Western District of Tennessee against the New York and Maine based firms, along with the third firm, alleging breaches of fiduciary judgment and covenant of good faith and faith dealing relative to the joint venture agreement, seeking the imposition of a constructive trust, and seeking declaratory relief. *Id.* at 996–97. The district court denied the out-of-state law firms' motion to dismiss, noting that the defendants had "purposefully availed themselves of the privilege of acting in Tennessee by prosecuting the protracted [antitrust litigation] in the [forum state]." *Id.* at 1003. The court noted that the cause of action had arisen in Tennessee, and that all of the defendants had participated in the Tennessee litigation, one of the foreign defendants had acted as lead counsel, and that the pleadings reflected that the foreign defendant had acted as lead counsel in another suit in the Western District of Tennessee. *Id.* at 1003–04. The foreign defendants had a concrete presence with the forum state—they were physically present in Tennessee representing clients and participated in the underlying litigation. *Id.*

22

Here, Mona's connection with Maryland is much more tenuous. There is no evidence that she traveled to Maryland in connection with the Asbestos Case. Although *Glassman* and the instant case both involve situations where the claims in the second lawsuit involved matters that were collateral to the initial litigation, here, Randy's collateral claims against Mona are based upon a more attenuated connection to the Asbestos Case than the collateral claims asserted against the foreign defendants in *Glassman*. As noted *supra*, the tangential connection between the Asbestos Case and this case is underscored by Randy's evidence and arguments of counsel presented at the damages hearing. Randy's alleged injury occurred in North Carolina and the ultimate resolution of this case involved the application of North Carolina law.

*Rusakiewicz v. Lowe*, 556 F.3d 1095 (10th Cir. 2009), is also factually distinguishable. In that case, the Tenth Circuit determined that the exercise of personal jurisdiction was appropriate in Utah in a lawsuit brought by members of a veterans' organization, alleging abuse of process and unlawful use of legal proceedings against the leaders of the organization's California department where out-of-state leaders met at a meeting in Utah and approved the filing of a lawsuit in Utah, and voted to fund it. *Id.* In *Rusakiewicz*, the tortious injury occurred in the forum state, the defendant had a more significant physical presence, and the claims being pursued in the subsequent litigation were brought under the applicable law of the forum state. *Id.* at 1101. Unlike the injury in *Rusakiewicz*, Randy's alleged injury did not occur in Maryland, but in North Carolina. Mona and Edwin's decision to file the Asbestos Case was not made in Maryland, nor are

there any facts in the record indicating that Mona or Edwin traveled to Maryland. The facts making an exercise of personal jurisdiction appropriate in *Rusakiewicz* are not present here.

We agree with the Court of Special Appeals that the district court's analysis in the case of *Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc.*, 989 F. Supp. 265 (D.D.C. 1998) is instructive. *Pinner*, 240 Md. App. at 109. In *Mallinckrodt*, several pharmaceutical companies sued the Food and Drug Administration ("FDA") in the United States District Court for the District of Columbia. *Mallinckrodt*, 989 F. Supp at 266–67. The plaintiff pharmaceutical companies alleged that the FDA treated their products as drugs while treating the products of their competitor, Molecular Biosystems, Inc. ("MBI"), as a medical device. *See Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 20 (D.D.C. 1997). MBI intervened and filed a counterclaim raising patent law issues. *Mallinckrodt*, 989 F. Supp at 267. Ultimately, the entire case was dismissed as moot because the FDA acceded to the plaintiff's request. *Id.*

Subsequently, Mallinckrodt Medical, Inc. (Mallinckrodt), the marketer for MBI, and MBI filed in the same court a separate suit against the same pharmaceutical companies and others, alleging patent infringement claims and seeking the same relief that MBI sought in its earlier counterclaim. *Id.* After the defendant pharmaceutical companies filed a motion to dismiss, the court *inter alia*, considered a subsection of D.C.'s long arm statute, and concluded that the court lacked jurisdiction. *Id.* at 270–71. The district court explained that filing the earlier suit did not constitute consent to be sued in the later action nor did it constitute "transacting business" in the District of Columbia under the long arm statute. *Id.*

24

In its reported opinion, the Court of Special Appeals acknowledged "that the District of Columbia is unique because it is the nation's capital, and an entity seeking redress of grievances from an agency of the federal government does not submit itself to jurisdiction under the long arm statute." *Pinner*, 240 Md. App. at 110 (citing *Mallinckrodt*, 989 F. Supp. at 271). The intermediate appellate court stated that

> [n]evertheless, we conclude that the result is consistent with the law of Maryland. Ordinarily, the filing of a lawsuit does not constitute regularly doing business in Maryland and is not a persistent course of conduct in Maryland. *Cf. Stisser v. SP Bancorp, Inc.*, 234 Md. App. 593, 631–41 (2017) (holding that the "mere act of filing [articles of incorporation] in Maryland falls short of the grip of Maryland's long arm [statute]" particularly because the plaintiffs' claims were only "tangentially related" to that conduct).

*Id.* at 110–11.

We agree with the Court of Special Appeals that the district court's analysis in *Mallinckrodt* is instructive. Mona's authorization to file the Asbestos Case did not constitute implied consent to be sued in Maryland in a separate case that would be tenuously related to the Asbestos Case. Moreover, as discussed *infra*, we do not find that Mona's sole act of filing and prosecuting the Asbestos Case constituted a "persistent course of conduct" under the long arm statute.

In an attempt to overcome the lack of evidence that Mona traveled to Maryland or otherwise engaged in any activity other than retaining lawyers to file and prosecute a wrongful death action in Maryland, Randy directs our attention to cases where the Court held that personal jurisdiction may be exercised over a non-resident defendant based upon the actions of the non-resident's agent's conduct in the forum state. *See Mackey v.*

25

*Compass Mktg., Inc.*, 391 Md. 117, 125 (2006); *Mohamed v. Michael*, 279 Md. 653, 659 (1977); *Harris v. Arlen Prop., Inc.*, 256 Md. 185, 196 (1969).

Although we agree that an agent's conduct can give rise to personal jurisdiction over a principal,[10] the agent's activity and conduct must nonetheless fall within the long arm statute and comply with minimum due process requirements. The cases cited by Randy to support his argument that Mona is subject to Maryland jurisdiction in this case under agency principles are also factually distinguishable from the facts of this case.

In *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 121 (2006), the Court of Appeals answered a question certified by the United States District Court regarding whether Maryland recognizes the conspiracy theory of jurisdiction as a matter of law. We find *Mackey* to be inapposite to our analysis here. That case involved allegations of a civil conspiracy between several defendants to cut plaintiff's brokerage commissions. *Id.* at 191. Here, Randy has not alleged a civil conspiracy between Mona and her attorneys.

In *Mohamed v. Michael*, 279 Md. 653, 654 (1977), a Canadian citizen instituted an action against a Kentucky resident, alleging malicious prosecution, false imprisonment, and defamation. The parties had entered into a contract in Kentucky whereby the plaintiff agreed to purchase race horses from the defendant. *Id.* This Court held that the activities of the defendant and his attorney agents within the State of Maryland constituted "purposeful activity" within the State to be considered a transaction of business within

---

[10] The long arm statute expressly contemplates that a non-resident principal may be subject to specific personal jurisdiction for conduct of an agent. *See* CJ § 6-103(b) ("A court may exercise personal jurisdiction over a person, who directly or by an agent . . .").

26

Maryland under CJ § 6-103(b)(3) and that the exercise of jurisdiction comported with due process. *Id.* at 659. In that case, the agent's activities were extensive and included: undertaking "intensive negotiations" over the course of six weeks while the plaintiff was temporarily living in Maryland; causing a fugitive arrest warrant to be issued thereby causing plaintiff's arrest in Maryland; and continuing to engage in negotiations in Maryland after the plaintiff's arrest.[11] *Id.* at 655–59.

In *Harris v. Arlen Properties, Inc.*, 256 Md. 185, 197 (1969), this Court held that a Maryland court could exercise jurisdiction over an out-of-state real estate development company for unpaid brokerage commissions in connection with the purchase of a Maryland commercial property. The Court concluded that the company and its officers had engaged in a persistent course of conduct under the Maryland long arm statute, and had sufficient minimum contacts with Maryland giving rise to specific jurisdiction based upon: an employee's trips on multiple occasions to Maryland to look at site locations with the plaintiff; the company's execution of a purchase contract for the property in Maryland that was subject to the unpaid commissions; the company's retention of an engineering firm to address drainage and to bury cable on the property; and the agent's filing of site plans and an application for a building permit with local permitting authorities. *Id.* at 197.

---

[11] Based upon the facts described in *Mohamed*, the plaintiff also alleged that the intensive negotiations were not just undertaken by the defendant's attorneys, but that they were also conducted by the defendant in Maryland. *See Mohamed v. Michael*, 279 Md. 653, 656 (1977) ("[Plaintiff] contends that the intensive negotiations [were] conducted with [Defendant] in Maryland, during which threats were made to use criminal process . . . .").

*Harris* and *Mohamed* both involved extensive and concrete activities by defendants' agents, which were conducted in Maryland, and which caused tortious injury in the State. In this case, the agents' sole act was the filing of a lawsuit, which concluded in a settlement with some of the defendants, with a resulting injury alleged to have occurred in North Carolina. The facts in this case do not give rise to the same magnitude of contacts with Maryland that were present in *Harris* and *Mohamed*.[12]

Randy asks the Court to take judicial notice of the docket entries in the Asbestos Case, as well as the pleadings filed by Mona's counsel, which he contends reflect "extensive litigation activities." We are unpersuaded by Randy's argument that the docket entries reflect "extensive litigation activities" of a character sufficient to establish a substantial connection with Maryland and a justification to submit Mona to jurisdiction.

---

[12] Randy also contends that *Presbyterian University Hospital v. Wilson,* 337 Md. 541 (1995), is applicable and argues that Mona's contact with Maryland is more extensive than the contacts between a Pennsylvania hospital, Presbyterian University Hospital ("PUH"), and Maryland in that case. We disagree. In *Wilson*, PUH had registered in Maryland as a licensed transplant referral center. *Id.* at 546. At the time of Mr. Wilson's (a Maryland resident's) death, there were no hospitals in Maryland that were licensed to perform liver transplants. *Id.* PUH was aware that there were no other registered liver transplant hospitals in Maryland and PUH actively sought to be designated and approved as a Maryland provider under Maryland regulations. *Id.* Under the facts of that case, we held that by registering to become a Maryland transplant provider, "and by becoming the only approved liver transplant center in the State of Maryland, [PUH] purposefully availed itself of the benefits conferred upon it by the State of Maryland." *Id.* at 555. Moreover, the Court found that PUH "actively solicited Maryland [Medical Assistance] patients, and specifically solicited [the plaintiff]." *Id.* at 560. Further, we noted the exercise of personal jurisdiction did not offend the traditional notions of fair play and substantial justice because Maryland had a strong interest in obtaining relief for its residents and there was no undue burden on the Hospital. *Id.* at 561. We find that PUH's business contacts with Maryland outlined in *Wilson*, including its registration in Maryland as the sole liver transplant hospital and its solicitation of Maryland patients, constitutes a more concrete nexus with Maryland than Mona's sole act of authorizing the filing of the Asbestos Case.

As in any asbestos case involving multiple defendants, the docket entries, while numerous, primarily consist of *pro forma* answers, cross-claims, and motions to dismiss filed by the various defendants, as well as stipulations of dismissals of many defendants. The docket entries do not reflect "extensive litigation activities" by Mona or her attorneys. To the contrary, the docket entries do not reflect that Mona was deposed,[13] and reflect that the case was resolved by a settlement without a trial. Based upon the records provided, we are not persuaded that Mona's attorneys' act of filing the Asbestos Case, resulting in a settlement payment to Mona, created a "'substantial connection' with Maryland such that having to defend [the instant] lawsuit" brought by Randy would be foreseeable. *CSR, Ltd*, 411 Md. at 485 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

To summarize this prong of our specific jurisdiction analysis, we hold that Mona's contacts with Maryland do not rise to the level of an "act by which the defendant purposefully avail[ed] [herself] of the privilege of conducting activities within the forum state" for purposes of a Maryland court exercising personal jurisdiction over her in this case. *Camelback Ski Corp. v. Behning*, 312 Md. 330, 337 (1988) (*Camelback II*) (citing *Burger King*, 471 U.S. at 475; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). There is no evidence that she traveled to Maryland. Her sole contact with Maryland arises out of a single lawsuit filed by her attorneys to prosecute a wrongful death case on behalf of her

---

[13] Although the docket entries reflect that Edwin was deposed in April 2010, it appears from the records filed in this case that Edwin was likely deposed in North Carolina. Edwin's counsel, Mary Keyes submitted an affidavit in connection with the Keyes Defendants' Motion to Dismiss where she stated that she spoke with Randy in April 2010 "while I was in North Carolina preparing [Edwin] Pinner for his deposition."

husband. Although the alleged injury to Randy "arises out of or relates to" Mona's litigation efforts in the Asbestos Case, under the facts of this case, it is not foreseeable that her connection with Maryland was "such that [she] should reasonably anticipate being haled into court" in Maryland to defend breach of fiduciary duty claims arising under North Carolina law filed by a North Carolina resident in connection with her duties as the personal representative of a North Carolina estate. *Bond v. Messerman*, 391 Md. 706, 730 (2006) (quoting *Burger King*, 471 U.S. at 476 (1985)).

### 2. Whether Plaintiff's Claims Arise out of Activities Directed at the State

The second prong of the due process analysis requires that we consider "whether the plaintiffs' claims arise out of those activities directed at the State." *Beyond Sys.*, 388 Md. at 26. As noted above, Count I alleged common law negligent breach of Maryland Rule 15-1001, which related to Mona's prosecution and settlement of the Asbestos Case. However, the failure to comply with Maryland Rule 15-1001 also formed the basis of Count II, which alleged a breach of her fiduciary duties under North Carolina law. Count II was not dismissed (and as Randy points out, was included in the order of default entered against Mona). As noted above, at the damages hearing, Randy's counsel stated that there are two components to jurisdiction—the failure of Mona's attorneys to give notice under Maryland Rule 15-1001, and the breach of fiduciary duty in North Carolina that caused injury in North Carolina. Counsel stated that the first component had "gone by the wayside." The ultimate resolution of this matter involved the application of North Carolina law in connection with an injury allegedly caused in North Carolina. We agree with the

30

Court of Special Appeals that "[t]he connection between Mona's breach of fiduciary duty in North Carolina and maintenance of the Asbestos Case is tenuous, especially with respect to the administration of the Estate." *Pinner*, 240 Md. App. at 111.

### 3. Constitutional Reasonableness Considerations

The third prong of the due process analysis for the exercise of specific jurisdiction requires that we consider "whether the exercise of personal jurisdiction would be constitutionally reasonable." *Beyond Sys.*, 388 Md. at 26 (citing *Carefirst*, 334 F.3d at 397) (additional citations omitted). Under this prong, the Court considers a variety of factors: "the burden on the defendant; the interests of the forum State; the plaintiff's interest in obtaining relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversy; and the shared interest of the several states in furthering fundamental substantive social policies." *Camelback II*, 312 Md. at 342 (citing *Asahi Metal Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987)). Randy asserts that the Court of Special Appeals failed to consider that Mona has the burden of establishing a compelling case that some other consideration made jurisdiction unreasonable. He also contends that the Court of Special Appeals made a factual finding that there was a practical burden occasioned by Mona's residency in North Carolina, her age and her health[14] based upon facts that are not contained in an affidavit.

Because we find that Randy failed to establish a *prima facie* case for the exercise of specific jurisdiction under the first two prongs of our constitutional analysis, the burden

---

[14] Randy's pleading recited that Mona was 70 years old at the time of the damages hearing. We have not considered Mona's health as part of our analysis.

31

does not shift to Mona to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see CSR, Ltd.*, 411 Md. at 493 (noting that because the defendant's contacts with Maryland did not satisfy the "purposeful availment" requirement, the Court did not need to "consider whether the exercise of personal jurisdiction would be constitutionally reasonable as required by our tests for either specific or general jurisdiction").

We do not need to undertake an extensive analysis of this third prong given our holding that we do not find that the first two prongs of the constitutional analysis are satisfied. However, while Maryland courts have an interest in evaluating compliance with the Maryland Rules of Procedure, we have no interest in adjudicating a breach of fiduciary claim arising between two North Carolina residents under North Carolina probate law, with an attenuated connection to this State. Moreover, considering the dismissal of the claims against Mona's attorneys, there is no longer even an efficiency interest in all the claims being adjudicated in the same forum. Balancing these concerns, we conclude that the factors weigh against exercising personal jurisdiction over Mona, where her sole contact with the forum state is the filing of one lawsuit.

### *Application of the Long Arm Statute – Persistent Course of Conduct*

Randy contends that Mona's prosecution of the Asbestos Case constitutes a "persistent course of conduct in the State," which caused injury to him outside of the State, and therefore falls within subsection (b)(4) of the long arm statute, CJ § 6-103. Because we conclude that to exercise personal jurisdiction over Mona would violate due process

32

requirements, "we construe our long-arm statute as not authorizing the exercise of personal jurisdiction over the defendant." *Bond v. Messerman*, 391 Md. 706, 721 (2006).

We are not aware of any case where a court has held that the act of filing a lawsuit has been found to constitute a "persistent course of conduct" under the language of a long arm statute. Under the language of subsection (b)(4) of the long arm statute, CJ § 6-103, specific jurisdiction may arise where a defendant: "[c]auses tortious injury . . . outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any *other* persistent course of conduct in the State. . . ." (emphasis added). The phrase "if he regularly does or solicits business, engages in any *other* persistent course of conduct in the State or . . ." makes it clear that "regularly doing business" or "regularly soliciting business" is a "persistent course of conduct." Randy has not alleged that Mona's activities constituted "regularly doing business" or regularly "soliciting business." Accordingly, we must decide whether the sole act of filing a lawsuit constitutes "other persistent course of conduct."

We find the plain meaning to be dispositive. Merriam-Webster defines "regular" as "recurring, attending, or functioning at fixed, uniform, or normal intervals." *Regular*, Merriam-Webster's Collegiate Dictionary 1048 (11th ed. 2020). "Persistent" is defined as "existing for a long or longer than usual time or continuously . . . continuing or inclined to persist in a course." *Persistent*, Merriam-Webster's Collegiate Dictionary 924 (11th ed. 2020). Randy asks the Court to hold that the filing of a single lawsuit constitutes "other persistent course of conduct" because of its duration. We disagree that, under the facts of this case, the duration of the litigation alone is sufficient to establish a "persistent course

33

of conduct," particularly given our requirement that we construe the language of the long arm statute with a constitutional gloss. *See CSR, Ltd.*, 411 Md. at 475 (quoting *Mohamed v. Michael*, 279 Md. 653, 658 (1977) (noting that when construing the words "transacts any business" under subsection (b)(1) of the long arm statute, the phrase must be "read with a constitutional gloss, requiring some 'purposeful activity' by the defendant as a prerequisite to the exercise of jurisdiction")). Interpreting the phrase within the constitutional requirements of due process, we believe that something more is required to establish a "persistent course of conduct" other than simply the duration of the act.

Our holding is consistent with other courts' interpretation of similar language in long arm statutes. In *Willis v. Semmes, Bowen & Semmes*, 441 F. Supp. 1235, 1237 (E.D. Va. 1977), the plaintiff sued a Maryland law firm in Virginia for conversion of a note. The firm had previously represented the plaintiff in a bankruptcy case in Virginia. *Id.* at 1240. The conversion allegedly took place in Maryland. *Id.* at 1241. The United States District Court for the Eastern District of Virginia held that it lacked personal jurisdiction over the firm for this claim, stating that "this limited, discrete quantum of activity does not amount to 'persistent conduct' in this state within the meaning of the statute." *Id.* at 1242.

In *Mercer v. Mackinnon*, 297 Va. 157, 159 (2019), the Virginia Supreme Court held that a nonresident's conduct in litigating a single case did not constitute engaging in a "persistent course of conduct" under the Virginia long arm statute. In that case, Virginia Mercer ("Mercer") was the caretaker of her father, Clifton Wood and stepmother, Eleanor Wood, both of whom resided in Virginia. *Id.* at 159. Mercer and Eleanor's niece, Lori-Belle MacKinnon ("MacKinnon") each filed petitions in Virginia seeking to be appointed

Eleanor's guardian. *Id.* at 160. A Virginia Court entered an interim order granting both Mercer and MacKinnon control over Eleanor's assets. *Id.* MacKinnon, a Canadian citizen and resident, appeared in the Virginia court regularly, by counsel and in person. *Id.* Following a trial on the merits, the Virginia court appointed Mercer as Eleanor's guardian. *Id.*

Subsequently, Mercer filed a separate case against MacKinnon, asserting various claims related to improper withdrawal of the Woods' bank accounts. *Id.* at 159–60. As the basis for personal jurisdiction, Mercer alleged that MacKinnon had engaged in a "persistent course of conduct" within the Virginia long arm statute. *Id.* at 161. Mercer alleged that MacKinnon: (1) traveled "to Virginia and removed Eleanor to Canada"; (2) "had a new power of attorney drawn up for Eleanor" in Virginia and "used the power of attorney to remove Clifton's name from one or more bank accounts . . . and to take control of Eleanor's retirement accounts"; (3) "used the power of attorney to have herself named as the death beneficiary on at least one of the couple's bank accounts"; (4) "filed a petition in the [Virginia] Circuit Court, seeking appointment as Eleanor's guardian and conservator"; (5) purposefully "availed herself of the jurisdiction of the [Virginia] Circuit Court voluntarily and appeared in that Court regularly, by counsel and in person on various matters, including a trial on the merits"; and (6) by appealing the judgment entered in the Virginia Circuit Court to the Virginia Supreme Court. *Id.* at 164.

The Virginia Supreme Court held that MacKinnon's contacts with Virginia did not rise to the level of "persistent course of conduct" within the meaning of the long arm statute. *Id.* The Virginia Supreme Court looked to the dictionary definition of "persistent"

35

and held that "MacKinnon's contacts with Virginia did not 'exist [] for a long or longer than usual time or continuously,' and they were not 'enduring' or 'lingering.'" *Id.* (quoting *Persistent*, Webster's Third New Int'l Dictionary 1686 (2002)). The court also analogized the facts of the case to the law firm's activities in *Willis* and found that "MacKinnon's contacts with Virginia constituted a 'limited, discrete quantum of activity.'" *Id.* at 164–65, (quoting *Willis*, 441 F. Supp. at 1242). "Because MacKinnon's activities were not sufficient in scope and duration to constitute a 'persistent course of conduct,'" the court found the Virginia Circuit Court lacked personal jurisdiction. *Id.* at 165.

Like the courts in *Mercer* and *Willis*, we hold that Mona's single act of filing and prosecuting the Asbestos Case constitutes a limited, discrete quantum of activity that does not rise to the level of a "persistent course of conduct" to justify the assertion of personal jurisdiction over her in this matter.

## IV. CONCLUSION

We hold that Mona's act of filing and prosecuting the Asbestos Case through counsel does not rise to the level of an "act by which defendant purposefully avail[ed] [herself] of the privilege of conducting activities within the forum state" for purposes of a Maryland court exercising specific jurisdiction over her in this case. *Camelback II*, 312 Md. at 337 (citing *Burger King*, 471 U.S. at 475; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). There is no evidence that Mona traveled to Maryland. Her sole contact with Maryland arises out of a single lawsuit filed by her attorneys to prosecute a wrongful death case on behalf of her husband. Under the facts of this case, it is not foreseeable that Mona's connection with Maryland is such that she should reasonably anticipate being haled into

36

court in Maryland to defend breach of fiduciary duty claims arising under North Carolina law filed by a North Carolina resident in connection with her duties as the personal representative of a North Carolina estate. Although the failure to comply with Maryland Rule 15-1001 related to activities directed at the State, such activities ultimately formed the basis of Randy's claim arising under North Carolina law, upon which he sought and received damages.

On balance, we conclude that the factors weigh against the constitutional reasonableness of causing Mona to defend this suit in Maryland. Our constitutional analysis is consistent with our interpretation of the Maryland long arm statute as it relates to a "persistent course of conduct." Mona's act of filing a sole lawsuit through counsel constitutes a discrete quantum of activity and does not rise to the level of a "persistent course of conduct" to justify the assertion of personal jurisdiction over her in this matter.

Other cases with different facts might cause us to hold differently. However, the facts of this case do not support such a holding.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**

37

Circuit Court for Baltimore City
Case No.:  24-C-16-000247
Argued: October 7, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 16

September Term, 2019

———————————————————

RANDY R. PINNER

v.

MONA H. PINNER, et al.

———————————————————

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Wilner, Alan M. (Senior Judge, Specially Assigned),

JJ.

———————————————————

Dissenting Opinion by Getty, J,
which Wilner, J., joins.

———————————————————

Filed: March 3, 2020

I respectfully dissent from the Majority's conclusion that the circuit court erred in exercising personal jurisdiction over the spouse and personal representative of the estate, Mona Pinner. I would reverse the judgment of the Court of Special Appeals and hold that the circuit court properly extended personal jurisdiction over Mona. I have no disagreement with the Majority's statement of the controlling legal principles and I agree that, in most cases, merely filing a lawsuit in Maryland does not constitute sufficient contact with the State to extend personal jurisdiction over a defendant. But this is not a case of merely filing a lawsuit.

The underlying asbestos lawsuit (a case that spanned nearly six years) and this case are inextricably intertwined because at the time the underlying lawsuit was converted into a wrongful death action, the son Randy Pinner was, under the Maryland Rules, entitled to notice and an opportunity to join as a party. *See* Md. Rule 15-1001. Randy was a potential beneficiary in the wrongful death lawsuit—a suit subject to Maryland laws and the Maryland Rules in a Maryland circuit court—and he was never given the opportunity to benefit from that suit. Moreover, once he did become aware of the Maryland wrongful death lawsuit, the opportunity to join was denied him because the statute of limitations had run. Denying Randy's opportunity to join is a clear miscarriage of justice.

Personal jurisdiction requires, among other things, that the case arise out of or relate to the defendant's contacts with the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb*

*Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For this reason, "specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 564 U.S. at 919 (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1966)). Here, the harm due to lack of notice is the key "occurrence" and "controversy that establishes jurisdiction." The harm by omission of notice, whether done negligently or deliberately, was done in Maryland not in North Carolina, even if the "decision" not to give notice was made in North Carolina and constituted a violation of North Carolina probate law. Indeed, Mona's attorneys, who were joined as co-defendants, could not be sued in North Carolina but could only be sued in Maryland (even though they ultimately were substantively dismissed with prejudice). That being the case, Randy would have had to split his cause of action between two states. Maryland may have been the only state where Randy could bring entire action.

Mona breached her fiduciary duties under Maryland law by failing to notify Randy of his obligation to participate in the wrongful death suit. Simply put, had Mona given timely notice under Maryland Rule 15-1001, or even given Randy informal notice, Randy would have timely intervened and had a place at the table. In that scenario, Mona would not have been able to independently enter into the settlement agreements in the wrongful death suit that she did not report to Randy or the North Carolina probate court. The Majority opinion denies Randy access to Maryland's courts that is rightfully provided for in the Maryland Rules.

2

I would therefore reverse the judgment of the Court of Special Appeals and hold that the circuit court properly extended personal jurisdiction over Mona.

Judge Wilner has authorized me to state that he joins in this opinion.